# **EXHIBIT B**

**COLE SCHOTZ P.C.**
Nolan E. Shanahan
Daniel F.X. Geoghan
Jacob S. Frumkin
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Fax

*Counsel for Atlas Union Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Penny Ann Bradley, | Case No. 18-10122 (JLG) |
| Debtor. | |

**DECLARATION OF SEBASTIAN PALAZIO IN SUPPORT OF**
**MOTION OF ATLAS UNION CORP. FOR ENTRY OF AN ORDER GRANTING**
**RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

I, Sebastian Palazio, make this declaration (the "Declaration") under 28 U.S.C. § 1746 and Rule 4001-1(b) of the Local Rules for the Bankruptcy Court for the Southern District of New York and state that:

1. I am an authorized representative of Atlas Union Corp. ("Atlas"). I submit this Declaration in support of the *Motion of Atlas Union Corp. For Entry of an Order Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "Motion"),[1] to which this Declaration is annexed.

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings given to them in the Motion.

54451/0003-15417698v4

2. Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge and my review of the annexed exhibits. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3. The Motion is related to, among other things, debts incurred by NSM82 LLC (the "Borrower") in its acquisition and renovations of certain real property located at 46 East 82nd Street, New York, New York 10028 (the "Property").

4. Norfolk Street Management LLC ("Norfolk") holds a 0.01% membership interest in, and is the managing member of, Borrower. Penny Bradley ("Bradley"), the above captioned debtor, holds 100% of the membership interests in Norfolk (the "Norfolk Membership Interests") and 10.78% of the membership interests in Borrower (the "Bradley's Membership Interests in Borrower" and, together with the Norfolk Membership Interests, the "Membership Interests"). The Borrower itself is a non-debtor entity that is 89% owned by persons and entities having no other connection to this case.

5. On or about May 29, 2014, Borrower secured initial financing for its refurbishment of the Property from Alpine Capital Bank ("Alpine"). The history regarding Borrower's financing arrangements with Alpine, as well as Alpine's assignment of various notes, mortgages, and security agreements to Atlas, are set forth in detail in the complaint (the "Complaint") filed by Atlas on December 12, 2017, which commenced a foreclosure action captioned Atlas Union Corp. v. 46 East 82nd LLC, et al., Supreme Court of the State of New York, New York County, Index No. 850289/2017 (the "Lawsuit"). A true and accurate copy of the Complaint (without exhibits) is annexed hereto as Exhibit 1.

6. On or about September 12, 2016, Borrower refinanced its debt with Alpine and consolidated all of its existing financing on the Property by executing in favor of Atlas a certain

2

Amended, Restated and Consolidated Secured Promissory Note (the "Consolidated Note") in favor of Atlas in the principal amount of $11,500,000, with a variable rate of interest and a maturity date of March 1, 2017. A true and accurate copy of the Consolidated Note is annexed hereto as Exhibit 2.

7. To secure payment of the Consolidated Note, Borrower executed in favor of Atlas a certain Consolidated, Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated September 12, 2016 (the "Consolidated Mortgage" and, together with the Consolidated Note and other documents relating to the consolidated loan, the "Loan Documents"), encumbering the Property. The Consolidated Mortgage was duly recorded with the City Register of the City of New York on September 19, 2016, under CRFN 2016000325197, and consolidated all existing mortgages on the Property. A true and accurate copy of the Consolidated Mortgage is annexed hereto as Exhibit 3.

8. To induce Atlas to enter into the Consolidated Note and Consolidated Mortgage, Bradley and Norfolk executed a Guaranty of Recourse Obligations, dated September 12, 2016, (the "Guaranty") in favor of Atlas. A true and accurate copy of the Guaranty is annexed hereto as Exhibit 4.

9. That same day, Bradley executed (i) a pledge and security agreement in favor of Atlas in Bradley's Membership Interests in Borrower; (ii) a pledge and security agreement in favor of Atlas in the Norfolk Membership; and (iii) in her capacity as managing member of Norfolk, a pledge and security agreement in favor of Atlas in Norfolk's membership interests in the Borrower (collectively, the "Pledges"). True and accurate copies of the Pledges are annexed hereto as Exhibits 5–7, respectively.

3

10. Financing statements (the "Financing Statements") with respect to the Consolidated Note, the Consolidated Mortgage and the Pledges were promptly filed with the New York Department of State on September 16, 2016. True and accurate copies of the Financing Statements are annexed hereto as Exhibit 8.

11. In accordance with the terms of the Consolidated Mortgage, Borrower was required to obtain a final certificate of occupancy for the Property (the "CO") no later than December 11, 2016, 90 days after the execution of the Loan Documents. See Consolidated Mortgage, § 3.17.

12. On or about February 22, 2017, Borrower purported to exercise its right to extend the maturity date of the Consolidated Note to June 1, 2017, as provided by the terms thereof. See Consolidated Note § 5. However, Borrower was not entitled to exercise the right to extend the maturity date at that time, because of its failure to timely advise Atlas of its election and the existence of an event of default under the Consolidated Mortgage (i.e., Borrower's failure to timely obtain the CO). See id. § 5(a) & (b); Consolidated Mortgage § 3.17.

13. Notwithstanding Borrower's failure to abide by the requirements for exercising the extension right, Atlas agreed, by correspondence to Borrower dated February 23, 2017, to extend the maturity date to June 1, 2017 (the "First Extension Letter"). A true and accurate copy of the First Extension Letter is annexed hereto as Exhibit 9.

14. On or about May 26, 2017, Borrower again purported to exercise its right to extend the maturity date of the Consolidated Note to September 1, 2017, as provided by the terms thereof. See Consolidated Note § 5. Borrower remained unable to exercise the right to extend the maturity date for the aforementioned reasons.

4

15. Notwithstanding Borrower's failure to abide by the requirements for exercising the extension right, Atlas again agreed, by correspondence to Borrower dated May 26, 2017, to extend the maturity date to September 1, 2017 (the "Second Extension Letter"). A true and accurate copy of the Second Extension Letter is annexed hereto as Exhibit 10.

16. As a result of Borrower's continued inability to pay the amounts due under the Consolidated Note, even with the two extensions granted to Atlas, Atlas agreed to enter into a certain Loan Modification Agreement (the "Modification Agreement") with Borrower, Bradley, and Norfolk. A true and accurate copy of the Modification Agreement is annexed hereto as Exhibit 11.

17. Pursuant to the Modification Agreement, the maturity date of the Consolidated Note was extended to December 1, 2017, and Borrower, Bradley, and Norfolk agreed, among other things, that (i) the amount due under the Consolidated Note as of July 22, 2017 was $12,747,497.47, (ii) there were no offsets, defenses or counterclaims under the Loan Documents; and (iii) the failure to timely obtain the CO constituted an event of default under the Consolidated Mortgage. See Modification Agreement at § 2.

18. On November 13, 2017, Atlas, through its counsel, provided Borrower with a letter (the "Compliance Letter") demanding that Borrower immediately provide Atlas with evidence of Borrower's compliance with its obligation under the Loan Documents. A true and accurate copy of the Compliance Letter is annexed hereto as Exhibit 12.

19. On November 29, 2017, Atlas, through its counsel, provided Borrower with a payoff letter (the "Payoff Letter"), explaining that all of Borrower's obligations under the Consolidated Note, in the amount of $13,326,129.71, would become due as of December 1, 2017. A true and accurate copy of the Payoff Letter is annexed hereto as Exhibit 13.

5

20.     On December 1, 2017—the maturity date under the Modification Agreement—Bradley responded to the Payoff Letter and requested a 45-60 day extension of the maturity date.

21.     On December 4, 2017, Atlas sent to Borrower a formal demand letter (the "Demand Letter"), notifying Borrower that the maturity date of the Consolidated Note had occurred on December 1, 2017, that Borrower was now in default of its obligations, and making a formal demand that Borrower immediately pay all amounts outstanding under the Consolidated Note.  A true and accurate copy of the Demand Letter is annexed hereto as Exhibit 14.  Borrower has never cured either default under the Consolidated Note and Consolidated Mortgage.

22.     On December 18, 2017, in connection with the Lawsuit, Atlas issued three notices of sale with respect to Norfolk's membership interests in Borrower, Bradley's Membership Interests in Borrower, and the Norfolk Membership Interests (collectively, the "Notices of Sale").  The notices of sale were also advertised in the New York Post on January 2, 2018 and January 9, 2018.  True and accurate copies of the Notices of Sale are annexed hereto as Exhibits 15–17, respectively.

23.     On January 17, 2018, Norfolk notified Atlas via letter that earlier in the day Norfolk had filed a petition for relief under chapter 11 in this Court (the "Notice of Filing Letter").  A true and accurate copy of the Notice of Filing Letter is annexed hereto as Exhibit 18. The Notice of Filing Letter demanded that Atlas cancel the foreclosure sales of the Norfolk Membership Interests, Bradley's Membership Interests in Borrower and Norfolk's membership interests in the Borrower.

24.     On January 18, 2018, Atlas notified Norfolk via letter that Atlas would postpone the sale of Norfolk's membership interests in the Borrower in light of Norfolk's chapter 11 filing (the "Postponement Letter").  A true and accurate copy of the Postponement Letter is annexed

6

hereto as <u>Exhibit 19</u>. Atlas further notified Norfolk in the Postponement Letter that the sales of the Membership Interests would go forward, as the Membership Interests were not property of Norfolk's bankruptcy estate and, therefore, the foreclosure sales of the Membership Interests were not barred by the automatic stay in Norfolk's chapter 11 case. The Lawsuit, as well as Atlas's ability to foreclose on the Property, was stayed by the filing of Norfolk's chapter 11 case.

25.   The auction of Bradley's Membership Interests in Borrower concluded at 3:00 p.m. on January 18, 2018, and the auction of the Norfolk Membership Interests concluded at 3:15 p.m. on January 18, 2018. Atlas purchased Bradley's Membership Interests in Borrower at auction for the sum of $60,000.00. Atlas purchased the Norfolk Membership Interests at auction for the sum of $60.00. The results of both auctions were certified by the auctioneer, Matthew D. Mannion, in certificates of sale (the "<u>Certificates of Sale</u>"). True and accurate copies of Certificates of Sale are annexed hereto as <u>Exhibits 20–21</u>, respectively.

26.   That same day, at either 3:13 p.m. or 3:19 p.m., Bradley filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. <u>See</u> Docket No. 1.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge, information and belief.

Dated: January 29, 2018

_/s/ Sebastian Palazio_
Sebastian Palazio
Authorized Representative