UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>PENNY ANN BRADLEY,<br><br>              Debtor-in-Possession. | CASE NO. 18-10122-jlg<br><br>CHAPTER 11 |
|---|---|

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION OF
NSM82 LLC TO APPOINT A CHAPTER 11 TRUSTEE PURSUANT TO
11 U.S.C. § 1104(a)
(Related Docket No.: 131)**

TO THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

    NSM82 LLC ("**NSM82**"), through its attorneys, Law Offices of Kenneth L. Baum LLC,

by way of Reply Memorandum in further support of the *Motion of NSM82 LLC to Appoint a*

*Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Dkt. No. 131] (the "**Motion**"), respectfully

represents:[1]

---

[1] Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed to them in the Motion.

**THE APPOINTMENT OF A TRUSTEE IS WARRANTED AND NECESSARY**

    A.    **NSM82 Has Standing to Seek the Appointment of a Chapter 11 Trustee.**

1. The Debtor first attempts to defeat the Motion by arguing that NSM82 has no standing to seek the appointment of a Chapter 11 trustee because it is not a party in interest, claiming that NSM82 "has not provided even a scintilla of explanation, let alone evidence, as to any claim it purports to hold against the Debtor such that NSM[82] could be deemed a creditor." (*See Debtor's Omnibus Opposition to the Motion of NSM82 LLC to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a) and Joinder of Atlas Union Corp.* [Dkt. No. 139] ("**Debtor's Opposition**") at p. 12, ¶ 53.)  This argument fails for two (2) simple reasons.

2. First, in its motion for entry of an order authorizing the issuance of a subpoena to the Debtor and compelling her to appear for an examination and produce documents pursuant to Fed. R. Bankr. P. 2004 [Dkt. No. 83] (the "**Rule 2004 Motion**"), NSM82 explained that it "has a substantial claim against the Debtor that it seeks to further quantify and file a proof of claim for in the Debtor's Chapter 11 case." (Rule 2004 Motion, at p. 3, ¶ 8.) The elements of NSM82's claim against the Debtor include:

> a. The Debtor's rejection, while serving as managing member of Norfolk, of an offer to purchase the Property that would have satisfied the existing mortgage debt on the Property, thereby causing substantial damages to NSM82;
>
> b. The Debtor's encumbrance of the Property as security for a $2.6 million loan from Global Payment Services Limited and failure to explain how the proceeds of that loan were used;
>
> c. The Debtor's overpayment of an investor in NSM82, Stephen Squinto, by approximately $250,000; and
>
> d. The Debtor's apparent use of the Property for her own benefit, which has caused damage to and devalued the Property.

(Rule 2004 Motion at pp. 2-3, ¶¶ 4-7.)

3. The Debtor did not oppose the Rule 2004 Motion, nor, critically, did she claim that NSM82 lacked standing as a party in interest to seek discovery under Bankruptcy Rule 2004, which is a *sine qua non* of obtaining such relief. *See* Fed. R. Bankr. P. 2004(a) ("On motion of any party in interest, the court may order the examination of any entity."). After consenting to NSM82 obtaining an order for discovery, producing numerous documents (with a promise to produce more), agreeing to appear for her deposition, and also consenting to entry of an order extending the time within which NSM82 may file a complaint determining the dischargeability of its debt pursuant to Section 523(c) of the Bankruptcy Code (*see* Dkt. No. 116) – all without arguing that NSM82 lacked standing as a party in interest – the Debtor cannot now take a contrary position as grounds for opposing the Motion. *See In re Stevenson*, 2008 WL 2003125, *2 (Bankr. D.D.C. May 8, 2008) ("If a party fails to timely assert that a party is not a real party in interest, the argument is waived."),

4. In addition, even if NSM82's claim is presently unliquidated – a condition that NSM82 intends to remedy through the Rule 2004 discovery process – this does not prevent NSM82 from seeking the appointment of a Chapter 11 trustee. Pursuant to Section 1109(b) of the Bankruptcy Code, "[a] party in interest, including…a creditor…, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The term "creditor" is defined under the Bankruptcy Code as, *inter alia*, an "…entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor…." 11 U.S.C. § 101(10)(A). The term "claim," in turn, is defined as the "…right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…." 11 U.S.C. § 101(5)(A). Accordingly, NSM82, as the holder of an unliquidated claim, clearly has standing to seek the appointment of a Chapter 11 trustee.

3

> **B.  The Debtor's Recent Arrest and Indictment for Mortgage Fraud, Combined with Her Lack of Disclosure Regarding the Post-Petition Disposition of More Than $2.2 Million, Necessitates the Appointment of a Chapter 11 Trustee Pursuant to Section 1104(a)(1) and (2) of the Bankruptcy Code.**

5. The Debtor goes to great pains to distinguish the level of proof necessary for a criminal indictment under New York law from that of the appointment of a Chapter 11 trustee under Section 1104(a) of the Bankruptcy Code, and to argue that her recent arrest and indictment, standing alone, do not warrant the appointment of a trustee. There are several critical facts, however, that overcome her arguments.

6. First, the Debtor was not arrested for an ordinary crime unrelated to her role as a Chapter 11 debtor-in-possession. She was charged by the Manhattan District Attorney, and indicted, based on multiple counts of fraud; specifically, Residential Mortgage Fraud in the First Degree, Grand Larceny in the Second Degree, Forgery in the Second Degree, and Criminal Possession of a Forged Instrument in the Second Degree. (*See* Indictment in The People of the State of New York against Penny Bradley, a true copy of which is attached as **Exhibit A**.) These are gravely serious accusations that not only will require the Debtor to expend a significant amount of time and resources to defend,[2] but also go to the heart of her fiduciary duty to her creditors. *See In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) ("The debtors, as debtors in possession, and Gersten, their president, owed fiduciary duties to the creditors and the estate.").

---

[2] In her Opposition to the Motion, the Debtor notes that she "has retained experienced counsel (Benjamin Brafman, Esq.) who is vigorously defending the criminal case and who has been paid by the Debtor's ex-husband." (Debtor's Opposition at p. 18, ¶ 79.) Nowhere does the Debtor state when she intends to file an application to retain special criminal counsel pursuant to Section 327(e) of the Bankruptcy Code and provide the requisite disclosures regarding, *inter alia*, the proposed compensation arrangement pursuant to Fed. R. Bankr. P. 2014.

7. The charges leveled against the Debtor by the Manhattan District Attorney, in and of themselves, are sufficient to cast serious doubt on the Debtor's ability to continue to serve in a fiduciary role for her creditors. Other facts and allegations regarding proper disclosure of her assets and their disposition, however, only add fuel to the fire.

8. As noted in the Motion, Bistro Shop, LLC received $1,860,172.54 on March 28, 2018, another $412,524.01 on March 29, 2018, and then, beginning almost immediately thereafter, made several transfers to an account ending in 6922 that virtually depleted the funds in their entirety. In her Opposition to the Motion, the Debtor asserts that that money was transferred to one of her wholly-owned entities, PBOR, LLC. While that appears to be correct – a review of PBOR, LLC's bank records for its account ending in 6922 reflect the receipt of these funds – it is also clear that PBOR, LLC, rapidly spent down that money almost in its entirety on what appear to be excessive and luxury purchases. As of March 29, 2019, there was only $39,159.83 remaining in PBOR, LLC's bank account (see statement attached hereto as **Exhibit B**), begging the question of how the Debtor managed to spend down more than $2 million in one (1) year.

9. Moreover, in a July 10, 2019 article in the *New York Post* regarding the Debtor's arrest (a true copy of which is attached as **Exhibit C**), it is noted that, "[p]rosecutors allege Bradley also splashed out on $30,000 worth of Rolexes and purchased $98,000 worth of gold coins which investigators have been unable to recover." While these alleged luxury purchases apparently remain the subject of an ongoing investigation, it should be noted that in Item 12 of Schedule B to her Chapter 11 petition, the Debtor listed "One Rolex Watch ($5000) and Assorted other jewelry ($2000)." In Item 16 to Schedule B, the Debtor listed $1,000 in cash, and in Item 8, she listed no collectibles of value. If the Debtor truly is in possession of almost $130,000 in jewelry and collectibles but has not accounted for them in her bankruptcy schedules,

not only should that constitute further grounds to grant the Motion, it may also warrant the filing of a similar motion by the United States Trustee pursuant to Section 1104(e) of the Bankruptcy Code and a referral to the United States Attorney for possible bankruptcy fraud.

10.   Taken together, the above circumstances leave NSM82 – and, presumably, most or all of the Debtor's other creditors – with no faith that the Debtor can carry out her fiduciary duty to her creditors to maximize the possible return to them.  Appointing a Chapter 11 trustee will not prevent the Debtor from earning a living or filing a plan of reorganization; it will simply add a level of confidence in the administration of the Debtor's estate that currently, and justifiably, does not exist.

11.   Accordingly, the Court should appoint a Chapter 11 trustee pursuant to Section 1104(a)(2) of the Bankruptcy Code.

12.   No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, NSM82 respectfully requests entry of an order granting the relief sought in the Motion and such other relief as the Court deems just and proper.

Dated:   Hackensack, New Jersey
         July 24, 2019

                                                    LAW OFFICES OF KENNETH L. BAUM LLC
                                                    Attorneys for NSM82 LLC


                                                    By:      */s/ Kenneth L. Baum*
                                                             Kenneth L. Baum
                                                             167 Main Street
                                                             Hackensack, New Jersey 07601
                                                             (201) 853-3030
                                                             (201) 584-0297 Facsimile
                                                             kbaum@kenbaumdebtsolutions.com

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

PENNY BRADLEY,

Defendant.

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuses the defendant of the crime of **RESIDENTIAL MORTGAGE FRAUD IN THE FIRST DEGREE**, in violation of Penal Law §187.25, committed as follows:

The defendant, in the County of New York, on or about September 9, 2016, knowingly and with intent to defraud, presented, caused to be presented, and prepared with knowledge and belief that it would be used in applying for, underwriting and closing a residential mortgage loan, a written statement, to wit, the "Consent of Majority in Interest of Members of 46 East 82nd Street LLC" and its signature pages, which contained materially false information concerning a fact material thereto and thereby received proceeds and any other funds in the aggregate in excess of one million dollars.

SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **GRAND LARCENY IN THE SECOND DEGREE**, in violation of Penal Law §155.40(1), committed as follows:

The defendant, in the County of New York, during the period from on or about February 14, 2014, to on or about September 29, 2016, stole property from 46 East 82nd Street LLC and the value of the property exceeded fifty thousand dollars.

THIRD COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **FORGERY IN THE SECOND DEGREE**, in violation of Penal Law §170.10(1), committed as follows:

The defendant, in the County of New York, on or about September 7, 2016, with intent to defraud, deceive and injure another, falsely made, completed and altered a written instrument, the same being and purporting to be, and calculated to become and to represent if completed, an instrument which did and may have evidenced, created, transferred, terminated and otherwise affected a legal right, interest, obligation and status, to wit, the signature page to the "Consent of Majority in Interest of Members of 46 East 82nd Street LLC" bearing the name Oded Levy.

FOURTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE SECOND DEGREE**, in violation of Penal Law §170.25, committed as follows:

The defendant, in the County of New York, on or about September 7, 2016, knowing the instrument to be forged and with intent to defraud, deceive and injure another, uttered and possessed a forged instrument, the same being and purporting to be, and calculated to become and to represent if completed, an instrument which does and may evidence, create, transfer, terminate, and otherwise affect a legal right, interest, obligation and status, to wit, the signature page to the "Consent of Majority in Interest of Members of 46 East 82nd Street LLC" bearing the name Oded Levy.

FIFTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **FORGERY IN THE SECOND DEGREE**, in violation of Penal Law §170.10(1), committed as follows:

The defendant, in the County of New York, on or about September 7, 2016, with intent to defraud, deceive and injure another, falsely made, completed and altered a written instrument, the same being and purporting to be, and calculated to become and to represent if completed, an instrument which did and may have evidenced, created, transferred, terminated and otherwise affected a legal right, interest, obligation and status, to wit, the signature page to the "Consent of Majority in Interest of Members of 46 East 82nd Street LLC" bearing the name Denise LePera.

SIXTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE SECOND DEGREE**, in violation of Penal Law §170.25, committed as follows:

The defendant, in the County of New York, on or about September 7, 2016, knowing the instrument to be forged and with intent to defraud, deceive and injure another, uttered and possessed a forged instrument, the same being and purporting to be, and calculated to become and to represent if completed, an instrument which does and may evidence, create, transfer, terminate, and otherwise affect a legal right, interest, obligation and status, to wit, the signature page to the "Consent of Majority in Interest of Members of 46 East 82nd Street LLC" bearing the name Denise LePera.

CYRUS R. VANCE, JR.
District Attorney

GJ #1A, GJ Case # 3

Filed:  NA

No.

THE PEOPLE OF THE STATE OF NEW YORK

-against-

PENNY BRADLEY,

Defendant.

INDICTMENT

RESIDENTIAL MORTGAGE FRAUD IN THE FIRST DEGREE, P.L. §187.25
GRAND LARCENY IN THE SECOND DEGREE, P.L. §155.40(1)
FORGERY IN THE SECOND DEGREE, P.L. §170.10(1), 2 Cts
CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE SECOND DEGREE, P.L. §170.25, 2 Cts

CYRUS R. VANCE, JR., District Attorney

A True Bill

Jaime Hickey-Mendoza
Rackets Bureau                                                                                     Foreman

# EXHIBIT B

## CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

March 01, 2019 through March 29, 2019
Account Number: ...922

00000545 DRI 802 142 09319 NNNNNNNNNNN  1 000000000 D6 0000
PBOR LLC
40 E 78TH ST APT 11F
NEW YORK NY 10075-1830

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

### We updated our disclosures

On March 17, 2019, we published an updated version of our Deposit Account Agreement and the document explaining our Additional Banking Services and Fees. You can get the latest agreements at a branch or by request when you call us. Here's what you should know:

- We're using a payment network that supports real-time payments. When you send or receive a real-time payment, you confirm that you're not acting on the behalf of someone who is not a U.S. citizen or resident. (General Account Terms, Section I, Rules governing your account)

- We've reduced the Chase wire fee to send an international wire in a foreign currency to $5 per transfer when you use chase.com or the Chase Mobile® app. As a reminder, there is no Chase wire fee when your transfer is equal to $5,000 U.S. dollars or more.

Please call us at the number on this statement if you have any questions.

### CHECKING SUMMARY    Chase Performance Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $7,865.85 |
| Deposits and Additions | 5 | 115,166.72 |
| Checks Paid | 4 | -2,911.27 |
| ATM & Debit Card Withdrawals | 66 | -5,928.40 |
| Electronic Withdrawals | 16 | -75,069.07 |
| Fees | 1 | -64.00 |
| Ending Balance | 92 | $39,159.83 |

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/01 | Online Transfer From Chk ...8508 Transaction#: 7986647466 | $4,770.00 |
| 03/04 | Online Transfer From Chk ...3233 Transaction#: 7998829376 | 9,500.00 |
| 03/05 | 1099-Misc Credit For Delayed/Cancelled Wire Transfer(S) - Correction 9020230 | 0.72 |
| 03/06 | Remote Online Deposit 1 | 1,896.00 |
| 03/15 | Online Transfer From Chk ...0185 Transaction#: 8035744670 | 99,000.00 |
| **Total Deposits and Additions** | | **$115,166.72** |

---

## CHASE ◯

March 01, 2019 through March 29, 2019
Account Number: ...6922

### CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 5817 ^ | | 03/21 | $170.00 |
| 5824 * ^ | | 03/27 | 1,378.00 |
| 5828 * ^ | | 03/19 | 1,328.27 |
| 5830 * | Check # 5830  American Express Arc Pymt  Arc ID: 1199148000 | 03/05 | 35.00 |
| **Total Checks Paid** | | | **$2,911.27** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.
^ An image of this check may be available for you to view on Chase.com.

### ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 03/01 | Card Purchase | 02/28 Amzn Mktp US*MI4Oz1S Amzn.Com/Bill WA Card 4260 | $33.77 |
| 03/01 | Card Purchase | 02/28 Amazon.Com*MI4Rr4Vn2 Amzn.Com/Bill WA Card 4260 | 23.68 |
| 03/01 | Card Purchase | 02/28 Amazon.Com*MI5Af02K1 Amzn.Com/Bill WA Card 4260 | 44.62 |
| 03/01 | Card Purchase | 03/01 Uber *Trip Wrztr 800-592-8996 CA Card 4260 | 156.25 |
| 03/01 | ATM Withdrawal | 03/01 1025 Madison Ave New York NY Card 4260 | 1,000.00 |
| 03/04 | Card Purchase | 03/02 Uber * 800-592-8996 CA Card 4260 | 62.12 |
| 03/06 | Card Purchase | 03/06 Uber * 800-592-8996 CA Card 4260 | 73.48 |
| 03/06 | ATM Withdrawal | 03/06 525 E 71St St New York NY Card 4260 | 500.00 |
| 03/06 | Card Purchase | 03/08 Uber * 800-592-8996 CA Card 4260 | 47.16 |
| 03/07 | Card Purchase | 03/07 Uber * 800-592-8996 CA Card 4260 | 14.80 |
| 03/07 | Card Purchase | 03/07 Uber * 800-592-8996 CA Card 4260 | 11.32 |
| 03/07 | Card Purchase | 03/07 Uber * 800-592-8996 CA Card 4260 | 23.61 |
| 03/07 | Card Purchase | 03/07 Uber * 800-592-8996 CA Card 4260 | 16.91 |
| 03/08 | Card Purchase | 03/08 Uber * 800-592-8996 CA Card 4260 | 108.97 |
| 03/08 | Card Purchase | 03/08 Uber * 800-592-8996 CA Card 4260 | 67.70 |
| 03/11 | Card Purchase | 03/09 Uber * 800-592-8996 CA Card 4260 | 13.42 |
| 03/11 | Card Purchase | 03/08 Nyctaxi3G68 Long Is City NY Card 4260 | 15.60 |
| 03/11 | Card Purchase | 03/09 Barrel To Bottles Win 212-422-9463 NY Card 4260 | 30.79 |
| 03/11 | ATM Withdrawal | 03/09 525 E 71St St New York NY Card 4260 | 500.00 |
| 03/11 | Card Purchase | 03/10 Mercato.Com Fine Foo Httpswww.Merc NY Card 4260 | 120.52 |
| 03/11 | Card Purchase | 03/10 Uber * 800-592-8996 CA Card 4260 | 10.11 |
| 03/11 | Card Purchase | 03/09 Taxi Svc Long Island C Astoria NY Card 4260 | 8.76 |
| 03/11 | Card Purchase | 03/10 Uber * 800-592-8996 CA Card 4260 | 17.87 |
| 03/11 | Card Purchase | 03/10 Drizly OR Wino Drizly.Com NY Card 4260 | 61.73 |
| 03/11 | Card Purchase | 03/10 Uber * 800-592-8996 CA Card 4260 | 11.16 |
| 03/12 | Card Purchase | 03/12 Uber * 800-592-8996 CA Card 4260 | 91.66 |
| 03/12 | Card Purchase | 03/12 Uber * 800-592-8996 CA Card 4260 | 38.68 |
| 03/13 | Card Purchase | 03/13 Uber * 800-592-8996 CA Card 4260 | 15.20 |
| 03/14 | Card Purchase | 03/12 Queens Medation Lea Long Island C NY Card 4260 | 13.56 |
| 03/14 | Card Purchase | 03/14 Uber * 800-592-8996 CA Card 4260 | 10.75 |
| 03/14 | Card Purchase | 03/14 Uber * 800-592-8996 CA Card 4260 | 10.75 |
| 03/14 | Card Purchase | 03/13 Hss - Cafe #1 New York NY Card 4260 | 1.10 |
| 03/14 | Card Purchase | 03/14 Uber * 800-592-8996 CA Card 4260 | 13.19 |
| 03/14 | Card Purchase | 03/13 Antique Garage Restaura New York NY Card 4260 | 22.42 |
| 03/14 | Card Purchase | 03/14 Uber * 800-592-8996 CA Card 4260 | 15.32 |
| 03/14 | Card Purchase | 03/14 Uber * 800-592-8996 CA Card 4260 | 15.97 |

# EXHIBIT C

LIVE  Robert Mueller testifies on Capitol Hill about Russia probe

METRO

# Manhattan developer busted in mortgage fraud scheme

By Reuven Fenton, Jennifer Gould Keil and Ebony Bowden

July 10, 2019 | 6:21pm



Penny Ann Bradley
Steven Hirsch

A noted Upper East Side real estate developer took out fraudulent loans that allowed her to blow millions on Rolexes, jewelry, gold coins and lavish ski trips — declaring bankruptcy when it all went bust, prosecutors allege.

British born developer Penny Ann Bradley, 54, was arrested Wednesday and accused of fraudulently obtaining more than $12 million worth of loans in 2015 and 2016 against the LLC that owns her lavish $22.5 million condo, allegedly forging signatures to get it done.

Prosecutors allege Bradley used the 7,400 square-foot property at 46E. 82nd St. as her personal piggy bank — taking out mortgages against the condo to live large before going bankrupt without paying it back.

She was charged Wednesday with residential mortgage fraud in the first degree, grand larceny in the second degree, forgery in the second degree and criminal possession of a forged instrument.

Bradley — a former real estate heavy hitter who touted the fact she was one of few women in the developer business — pleaded not guilty in Manhattan criminal court and was being held in lieu of $400,000 bail.

The LLC was created with several members in 2014 for the limited purpose of acquiring, renovating and flipping the townhouse.



As the managing member, Bradley was able to raid the fund — stealing over $500,000 from the 46 East 82nd Street LLC to fund a lavish $35,000 trip to a private island in the Caribbean, a New Year's ski trip to Montana and the repayments on her Range Rover.

Prosecutors allege Bradley also splashed out on $30,000 worth of Rolexes and purchased $98,000 worth of gold coins which investigators have been unable to recover.

She also used the funds to pay legal fees relating to a restaurant she owned.

In August 2015, Bradley also obtained a $1.95 million loan — using the 82nd Street property as surety — and used it to made deposits on addresses at 50 E. 81st St. and 52 E. 64th St.

When she defaulted on that loan in February 2016, the lender recorded a mortgage against the townhouse.

In an attempt to refinance the mortgage, she attempted to take out a second loan for $11.5 million in September 2016.

When told she needed written consent of the majority of members of the LLC, Bradley allegedly forged at least two members' signatures. The mortgage was approved two days later.

After defaulting on that loan in December 2017, Atlas, the second lender, foreclosed on the loan and became the managing member of the LLC.

The property was slated for bankruptcy in 2018 but a spokesman for Bradley at the time maintained to The Post that the condo remained for sale under her control.

The 82nd Street property has been on and off the market for three years — originally priced at $22.5 million in 2015 before dropping to $17.25 million in 2018.

FILED UNDER    **CONDOS, FRAUD, PROPERTY, UPPER EAST SIDE**

Recommended by