**COLE SCHOTZ P.C.**
Nolan E. Shanahan
Daniel F.X. Geoghan
Jacob S. Frumkin
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Tel:    (212) 752-8000
Fax:    (212) 752-8393

*Counsel for Atlas Union Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Penny Ann Bradley, | Case No. 18-10122 (JLG) |
| Debtor. | **Related to Docket No. 135** |

**ATLAS UNION CORP.'S OBJECTION TO THE DEBTOR AND
DEBTOR-IN-POSSESSION'S MOTION TO ESTIMATE THE CLAIM OF ATLAS
UNION CORP. AGAINST THE DEBTOR'S ESTATE IN THE AMOUNT OF $0.00**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................. 2

OBJECTION ............................................................................................................................... 6

    I.   The Claim is Not Subject to Estimation Because it Neither is Contingent nor Unliquidated and Liquidation of the Claim Outside of Bankruptcy Would Not "Unduly Delay" Administration of the Bankruptcy Case. .................................................................6

        A.   Atlas's Claim is Not Contingent. ............................................................................... 7

        B.   Atlas's Claim is Not Unliquidated. .............................................................................. 8

        C.   Atlas's Ability to Recover Part of the Debt from the Potential Sale of the Property Does Not Render its Claim Contingent or Unliquidated. ............................................. 9

        D.   The Debtor Has Failed to Establish Undue Delay. .................................................... 11

    II.   The Claim Cannot Be Estimated At $0 ............................................................................13

        A.   Atlas's Claim Cannot Be Estimated or Reduced Until it is Satisfied in Full. ........... 13

        B.   Altas's Claim is Fully Allowable Under New York Law and Applicable Bankruptcy Law. ......................................................................................................................... 15

        C.   Atlas is Entitled to Post-Petition Attorneys' Fees and Costs as Part of its Claim. ..... 18

        D.   Atlas is Entitled to the Full Amount of its Post-Petition Interest. ............................. 19

        E.   *Alternatively*, Atlas is Entitled to Post-Petition Interest Through the Date Upon Which Stay Relief Was Granted. ............................................................................................ 23

    III.   The Value of the Property Should Be Measured as of the Disposition Date ....................25

REQUEST FOR CONTINUATION AND RESERVATION OF RIGHTS ............................... 26

CONCLUSION ........................................................................................................................... 27

54451/0003-17679806v4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Adelphia Bus. Sols., Inc.,
  341 B.R. 415 (Bankr. S.D.N.Y. 2003) ...............................................................8, 12

Brockenbrough v. Comm'r,
  61 B.R. 685 (W.D. Va. 1986), ................................................................................7

Bruning v. United States,
  376 U.S. 358 (1964) ..............................................................................................20

In re Caldor, Inc.-NY,
  240 B.R. 180 (Bankr. S.D.N.Y. 1999) ...................................................................7

In re Chemtura Corp.,
  448 B.R. 635 (Bankr. S.D.N.Y. 2011) ....................................................... 11-12, 25

In re Clore,
  547 B.R. 915 (Bankr. C.D. Ill. 2016) ...................................................................10

Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.,
  156 B.R. 890 (N.D.N.Y.1993) ..............................................................................16

In re Del Biaggio,
  496 B.R. 600 (Bankr. N.D. Cal. 2012) .................................................................16

In re Dewey & LeBoeuf LLP,
  478 B.R. 627 (Bankr. S.D.N.Y. 2012) ...................................................................9

In re Dow Corning Corp.,
  211 B.R. 545 (Bankr. E.D. Mich. 1997) ..............................................................11

In re El Paso Refining, Inc.,
  192 B.R. 144 (Bankr. W.D. Tex. 1996) ................................................................20

In re Enron Corp.,
  No. 01-16034 (AJG), 2006 WL 538552 (Bankr. S.D.N.Y. Jan. 6, 2006) .............11

Equitable Lumber Corp. v. Stanton Dev. Corp.,
  371 N.Y.S.2d 358 (N.Y. Sup. Ct. 1975) ..............................................................19

In re F.B.F. Indus., Inc.,
  165 B.R. 544 (Bankr. E.D. Pa. 1994) .....................................................................7

Feder v. John Engelhorn & Sons,
   202 F.2d 411 (2d Cir. 1953)................................................................14

In re Flaherty,
   10 B.R. 118 (Bankr. N.D. Ill. 1981) .......................................................8

In re Gen. Growth Props., Inc.,
   451 B.R. 323 (Bankr. S.D.N.Y. 2011)..................................................24

Ivanhoe Bldg. & Loan Ass'n of Newark, N.J. v. Orr,
   295 U.S. 243 (1935)................................................................. *passim*

In re Johnson,
   477 B.R. 879 (Bankr. M.D. Fla. 2012) .................................................14

In re Kellar,
   125 B.R. 716 (Bankr. N.D.N.Y. 1989) ............................................ 24-25

In re Lehman Bros. Holdings Inc.,
   No. 08-13555 (SCC), 2019 WL 2323775 (Bankr. S.D.N.Y. May 30, 2019) ............................7

Levine v. Infidelity, Inc.,
   770 N.Y.S.2d 83 (N.Y. App. Div. 2003) ...............................................17

In re LightSquared Inc.,
   No. 12-12080 (SCC), 2014 WL 5488413 (Bankr. S.D.N.Y. Oct. 30, 2014)............6, 7, 10, 14

Marine Midland Bank, N.A. v. Harrigan Enters., Inc.,
   500 N.Y.S.2d 408 (N.Y. App. Div. 1986) ..............................................17

In re Mazzeo,
   131 F.3d 295 (2d Cir. 1997)............................................................7, 9

Mrfs. Hanover Tr. Co. v. 400 Garden City Assocs.,
   568 N.Y.S.2d 505(N.Y. Sup. Ct. 1991) ................................................16

In re Nat'l Energy & Gas Transmission, Inc.,
   492 F.3d 297 (4th Cir. 2007) ......................................................... 20-22

O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines),
   981 F.2d 1450 (5th Cir. 1993) ............................................................6

Ogle v. Fid. & Deposit Co. of Maryland,
   586 F.3d 143 (2d Cir. 2009)..............................................................18

In re Realty Assocs. Sec. Corp.,
   66 F. Supp. 416 (E.D.N.Y. 1946) ......................................................14

iii

In re Rodgers,
      333 F.3d 64 (2d Cir. 2003)........................................................................................24

In re Roman Catholic Bishop of San Diego,
      374 B.R. 756 (Bankr. S.D. Cal. 2007) ...................................................................12

In re S. Side House, LLC,
      470 B.R. 659 (Bankr. E.D.N.Y. 2012 .....................................................................15

In re Sneijder,
      407 B.R. 46 (Bankr. S.D.N.Y. 2009)......................................................................10

Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,
      549 U.S. 443 (2007)................................................................................................15

U.S. v. Ron Pair Enters., Inc.,
      489 U.S. 235 (1989).................................................................................................21

In re Wash. Bancorporation,
      No. 90-00597, 1996 WL 148533 (D.D.C. Mar. 19, 1996) ......................................14

In re Wilson,
      9 B.R. 723 (Bankr. E.D.N.Y. 1981).........................................................................8

**Statutes**

11 U.S.C. § 502(c) .........................................................................................................6

11 U.S.C. § 506(a)(1)....................................................................................................23

11 U.S.C. § 506(b) ........................................................................................................23

11 U.S.C. § 541(a)(1).....................................................................................................23

NY RPAPL § 1301 ........................................................................................................16

NY RPAPL § 1371 .....................................................................................................16-17

54451/0003-17679806v4

TO THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE:

Atlas Union Corporation ("Atlas"), by and through its undersigned counsel, submits this

objection (the "Objection") to the *Debtor and Debtor-In-Possession's Motion to Estimate the*

*Claim of Atlas Union Corp. Against The Debtor's Estate in the Amount of $0.00* [Docket No.

135] (the "Motion") filed by Penny Ann Bradley (the "Debtor"), and respectfully states as

follows:

## PRELIMINARY STATEMENT

1.      Approximately eighteen months after commencing this chapter 11 case, during

which Debtor has accomplished very little other than obtaining numerous adjournments of the

hearing on her very own motion to dismiss, she now seeks to convince the Court that Atlas's yet-

to-be-filed claim (the "Claim") must be liquidated to prevent administration of the case from

being "unduly delayed" and to allow her to formulate a chapter 11 plan.[1]  The Debtor, however,

has not satisfied either prong of the standard for estimating a claim under section 502(c) of the

Bankruptcy Code (as defined below).  First, the Claim neither is contingent nor unliquidated.

The Debtor's liability as a guarantor was triggered prior to the Petition Date (as defined below)

and the Debtor is fully and unconditionally responsible for the underlying debt, which easily is

ascertainable and calculable under the applicable loan documents.  Second, the Debtor asserts

that waiting for the underlying collateral, certain real property located at 46 East 82nd Street,

New York, New York 10028 (the "Property"), to be liquidated would unduly delay

administration of this case.  However, as previewed for the court on August 2, 2019 during a

telephonic conference, Atlas has procured a purchaser for the Property and a closing is imminent.

Therefore, liquidation of Atlas's claim is highly unlikely to delay administration of this case, let

---

[1] It should be noted that the Debtor's exclusive right to file, and solicit acceptances on, a plan has expired.  See 11
U.S.C. § 1121(c).

1

alone *unduly* delay its progression.  Finally, Atlas submits that it would be procedurally improper

to estimate its Claim at this juncture, given that Atlas has not filed the Claim, the Bar Date (as

defined below), which was requested *by the Debtor* shortly before filing the Motion, has not yet

passed, and a plan has not yet been proposed, let alone previewed with key parties in interest.

Accordingly, Atlas submits that the Motion should be denied in its entirety.

2.      Even assuming, *arguendo*, that the Debtor satisfied the standard set forth in

section 502(c) for estimating the Claim, which Atlas does not concede, Atlas is entitled to an

allowed claim in the full amount covered by the Debtor's guaranty, not $0 as asserted by the

Debtor.  Under binding U.S. Supreme Court precedent, Ivanhoe Building & Loan Ass'n of

Newark, N.J. v. Orr, 295 U.S. 243 (1935), and cases interpreting Ivanhoe, a claim based on a

guarantee is not reduced, even by the creditor's foreclosure on the collateral that secures the

underlying obligation, unless or until the creditor's claim is paid in full.  Although Atlas has

taken steps to foreclose upon and sell the Property, such sale has not yet occurred and, as of

today's date, Atlas has not been paid in full for the underlying debt.  Accordingly, because Atlas

is entitled to assert a claim for the full amount of its deficiency, including post-petition interest,

default interest and attorneys' fees, Atlas submits that its Claim should not be estimated at $0.

## **RELEVANT BACKGROUND**

3.      On January 18, 2018, Bradley filed a *pro se* voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      On January 29, 2018, Atlas filed the *Motion of Atlas Union Corp. for Entry of an

Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 11]

(the "Stay Motion").  Atlas refers to and incorporates by reference (i) all facts asserted in the

Stay Motion; (ii) all facts asserted in the *Declaration of Sebastian Palazio* filed in support of the

2

Stay Motion (the "Palazio Declaration");[2] and (iii) all exhibits attached to the Palazio

Declaration.  Although the initial hearing on the Stay Motion was adjourned at the Debtor's

request, see Docket Nos. 24 and 25, on May 21, 2018, the Stay Motion was granted when the

Court entered the *Stipulation and Agreed Order Granting Relief from the Automatic Stay*

*Pursuant to 11 U.S.C. § 362(d)* [Docket No. 42] (the "Stay Relief Order").

     5.     As set forth in the Stay Motion and the Palazio Declaration, in or around

September of 2016, NSM82 LLC (f/k/a 46 East 82nd Street LLC) ("NSM82") consolidated

several existing obligations and executed a note for $11.5 million in favor of Atlas (the

"Consolidated Note").  See Palazio Decl. at Ex. 2.  The obligations were incurred by NSM82 for

the purpose of acquiring, renovating, and ultimately selling the Property.  The Consolidated Note

was secured by a mortgage (the "Consolidated Mortgage" and together with the Consolidated

Note and other documents related to the loan, the "Loan Documents") on the Property.  See id. at

Ex. 3.

     6.     To induce Atlas to enter into the Loan Documents, the Debtor and Norfolk Street

Management LLC ("Norfolk"), the managing member of NSM82, executed, among other things,

a Guaranty of Recourse Obligations, dated September 12, 2016 (the "Guaranty") in favor of

Atlas.  See Palazio Decl. at Ex. 4.  Pursuant to the Guaranty, the Debtor "unconditionally,

irrevocably, and absolutely" guaranteed the full amount of the debt under the Consolidated

Mortgage (the "Guaranteed Obligations").  Id. at Ex. 4, §§ 1-2.  Under the Guaranty, the

Guaranteed Obligations are triggered upon, among other things: (i) "a voluntary bankruptcy or

insolvency proceeding comments by [NSM82] or by [Norfolk]"; and (ii) "if, following an Event

of Default, Borrower, Managing Member, any Guarantor or any other member of Borrower

---

[2] Capitalized terms defined herein have meanings ascribed to them in the Palazio Declaration.

3

contests any foreclosure or any other enforcement action with respect to the Mortgage, any

Pledge Agreement or any other Loan Documents." Id. at Ex. 4, § 1(c)(i) and (iv).

7.      In connection therewith, the Debtor also executed (i) a pledge and security

agreement in favor of Atlas in the Debtor's membership interests in NSM82, (ii) a pledge and

security agreement in favor of Atlas in the Debtor's membership interests in Norfolk, and (iii) in

her capacity as managing member of Norfolk, a pledge and security agreement in favor of Atlas

in Norfolk's membership interests in NSM82 (collectively, the "Membership Interests"). See

Palazio Decl., at Exs. 5-7.

8.      NSM82 initially defaulted under the Loan Documents on or about December 11,

2016 when she failed to obtain a final certificate of occupancy for the Property. See Palazio

Decl. at Ex. 1, ¶¶ 28-29.  Nonetheless, after such default, Atlas permitted the Debtor to extend

the maturity dates set forth in the Consolidated Note, twice by letter and a third time by the

parties' entry into a modification agreement. Id. at Exs. 9-11.  On or about December 1, 2017,

NSM82's obligations under the Consolidated Note matured. Id. at Ex. 11, § 2.  On December 4,

2017, Atlas sent to NSM82 a formal demand letter notifying NSM82 that the maturity date had

occurred, that NSM82 was now in default of its obligations, and making a formal demand that

NSM82 pay all amounts outstanding under the Consolidated  Note. Id. at Ex. 14.  NSM82 never

cured the defaults under the Loan Documents.

9.      On December 12, 2017, Atlas filed a lawsuit in the Supreme Court of the State of

New York, New York, against NSM82, Norfolk, the Debtor and certain other defendants,

seeking to foreclose on the Property and for a money judgment against the Debtor and Norfolk to

the extent the value of the Property was insufficient to satisfy the outstanding amount due under

54451/0003-17679806v4

the Consolidated Note and Mortgage (the "Foreclosure Proceeding").[3] See Palazio Decl. at Ex.

1. The lawsuit named Bradley and Norfolk in their capacity as limited guarantors, as required by

New York law.

10.    On January 16, 2018, the Debtor, along with the other defendants, filed a Verified

Answer in the Foreclosure Proceeding, which was signed by the Debtor.

11.    On January 17, 2018, the Debtor, in her capacity as the managing member of

Norfolk, filed a voluntary chapter 11 petition in this Court on behalf of Norfolk (the "Norfolk

Bankruptcy Case"). See In re Norfolk Street Mgmt., Case No. 18-10113 (JLG) (Bankr.

S.D.N.Y.).

12.    Both the filing of the Verified Answer and the commencement of the Norfolk

Bankruptcy Case triggered the Debtor's obligations under the Guaranty. See Palazio Decl. at Ex.

4, §§ 1(c)(i) and (iv).

13.    On January 18, 2018, Atlas purchased the Debtor's Membership Interests in

NSM82 at auction. See Palazio Decl. at Exs. 20-21. Pursuant to the Stay Relief Order, Atlas

purchased the Debtor's Membership Interests in Norfolk in July 2018.

14.    On March 1, 2018, the Debtor filed her Schedules of Assets and Liabilities

[Docket No. 27], in which Atlas is listed as holding a disputed secured claim in the amount of

$0.00 and an unliquidated and disputed (but not contingent) unsecured claim in the amount of

$0.00.

15.    On June 18, 2019, the Debtor filed an *Application for Order Establishing Last

Date for Filing Proofs of Claim and Designating Manner of Notice* [Docket No. 120], which was

---

[3] The Debtor incorrectly states in the Motion that the Foreclosure Proceeding "was premised on the alleged non-monetary default of failure to obtain a final certificate of occupancy." See Motion at ¶ 39. To the contrary, the complaint contains an entire section on "The **Defaults**," which includes allegations that NSM82 defaulted on its payment obligations under the Consolidated Note. See Palazio Decl. at Ex. 1, ¶¶ 28-43.

granted by entry of an Order [Docket No. 137] on July 18, 2019 (the "Bar Date Order").  The

Bar Date Order set August 22, 2019 (the "Bar Date") as the last date for all persons and entities

to file a proof of claim against the Debtor.

16.    On July 17, 2019, NSM82 filed the *Motion of NSM82 LLC to Appoint a Trustee*

*Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 131] (the "Trustee Motion"), to which Atlas and

Russell and Lydia Pollack filed joinders.  *See* Docket Nos. 133 and 142.  On August 1, 2019, the

Office of the United States Trustee (the "U.S. Trustee") filed a statement in support of the

Trustee Motion.  *See* Docket No. 145.

17.    On July 18, 2019, the Debtor filed the Motion.

18.    As of the date hereof, Atlas has not filed a proof of claim, but reserves all rights to

do so.

## **OBJECTION**

### I.    **The Claim is Not Subject to Estimation Because it Neither is Contingent nor Unliquidated and Liquidation of the Claim Outside of Bankruptcy Would Not "Unduly Delay" Administration of the Bankruptcy Case.**

19.    Section 502(c) of the Bankruptcy Code permits estimation only where the moving

party proves that: (a) the claim is contingent or unliquidated, and (b) liquidation would "unduly

delay" administration of the case.  See 11 U.S.C. § 502(c); see also O'Neill v. Cont'l Airlines,

Inc. (In re Cont'l Airlines), 981 F.2d 1450, 1461 (5th Cir. 1993) ("[I]n cases where a claim is

neither contingent nor unliquidated, estimation is simply inappropriate.") (internal quotations

omitted); In re LightSquared Inc., No. 12-12080 (SCC), 2014 WL 5488413, at *3 (Bankr.

S.D.N.Y. Oct. 30, 2014)  ("In order to seek estimation, however, a party must demonstrate that

the gating requirements for estimation are met—namely, that the claim to be estimated is

contingent or unliquidated and that the delay associated with the fixing or liquidation of such

6

claim would be 'undue.' "").  Here, as set forth in detail below, the Debtor has failed to satisfy
either prong of this test.

> **A.**  **Atlas's Claim is Not Contingent.**

20.     The Bankruptcy Code does not define the term "contingent."  <u>In re Caldor, Inc.-
NY</u>, 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999).  However, courts have found that "a contingent
debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening
of an extrinsic event which will trigger . . . liability.'"  <u>In re Mazzeo</u>, 131 F.3d 295, 303 (2d Cir.
1997) (citing <u>Brockenbrough v. Comm'r</u>, 61 B.R. 685, 686 (W.D. Va. 1986)).

21.     Numerous courts have held that claims based on guarantees are not contingent
where the primary obligor is in default and amounts due under a guaranty are due and owing.
<u>See, e.g.</u>, <u>In re Lehman Bros. Holdings Inc.</u>, No. 08-13555 (SCC), 2019 WL 2323775, at *15
(Bankr. S.D.N.Y. May 30, 2019) ("[L]iability on a guarantee ceases to be contingent and is fixed
after the primary obligor has defaulted on its obligation; such default is the predicate to
enforcement of the guarantee."); <u>LightSquared</u>, 2014 WL 5488413, at *3 (denying motion to
estimate claim based upon a guaranty on the basis that "liability on a guaranty becomes fixed and
is no longer contingent because all predicates to enforcement have occurred"); <u>In re F.B.F.
Indus., Inc.</u>, 165 B.R. 544, 548–49 (Bankr. E.D. Pa. 1994) ("The law is clear that a guaranty or
surety claim is not contingent after a default by the primary obligor has occurred.").

22.     Here, the Claim is not contingent on a future event.  Rather, the Debtor became
fully and unconditionally obligated to pay the amounts due under the Guaranty when: (i) NSM82
defaulted on its underlying obligations; (ii) the Debtor filed a Verified Answer in the Foreclosure

7

Proceeding; and (iii) the Debtor commenced the Norfolk Bankruptcy Case.[4]  All of these events

of default occurred before the Petition Date.  As a result, the Debtor's liability is no longer

conditioned on a future event, and the Claim is therefore not contingent for purposes of section

502(c) of the Bankruptcy Code.

>    **B.**    **Atlas's Claim is Not Unliquidated.**

23.    A claim is liquidated "when . . . the amount due may be ascertained by

computation or reference to the contract out of which the claim arises."  In re Flaherty, 10 B.R.

118, 120 (Bankr. N.D. Ill. 1981); see also In re Adelphia Bus. Sols., Inc., 341 B.R. 415, 425

(Bankr. S.D.N.Y. 2003) (finding that a $15 million claim for outstanding principal under a credit

agreement, plus another $1.8 million in interest, was not subject to estimation because it was a

claim for a liquidated amount); In re Wilson, 9 B.R. 723, 726 (Bankr. E.D.N.Y. 1981)

("Notwithstanding the fact that the creditor may at some time in the future decide to release the

guarantor from some or all of the debt by applying the collateral does not alter the fact that as of

the date of the filing the debtor was liable for the full amount of the claim without regard to the

collateral. Therefore, the claim was liquidated as of the date the petition was filed.") (internal

citations omitted).

24.    Here, the Claim is for an exact dollar amount that can easily be determined under

the Loan Documents and the Guaranty.  Pursuant to the Guaranty, the Debtor unconditionally

guaranteed payment for the Guaranteed Obligations.  See Palazio Decl., at Ex. 4, §§ 2(a), 5(a).

The Guaranteed Obligations expressly include "the full amount of the Debt (as that such term is

defined in the Mortgage)."  Id. at  § 1(c).  The Consolidated Note sets forth, in detail, the method

for calculating the amounts due, including default interest.  Id. at Ex. 2, §§ 3-4, 7-8.  The

---

[4] Atlas believes the Debtor's obligations under the Guaranty may have been triggered much earlier as a result of her bad acts, including her potential criminal conduct in obtaining the underlying loan in her capacity as managing member of NSM82.

Guaranty also provides that the Debtor is responsible for interest, costs and expenses.  Id. at Ex. 4, § 16.

25.    The fact that Atlas's Claim includes interest, costs and attorneys' fees does not render its claim unliquidated because the calculation of these amounts is easily ascertainable. Likewise, the amount of interest to which Atlas is entitled is ascertainable because it can be calculated pursuant to the formula in the Loan Documents.  See, e.g., Mazzeo, 131 F.3d at 304 ("If the value of the claim is easily ascertainable, it is generally viewed as liquidated. . . . If that value depends instead on a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated.  [C]ourts have generally held that a debt is 'liquidated' . . . where the claim is determinable by reference to an agreement or by a simple computation.") (internal quotations and citations omitted); In re Dewey & LeBoeuf LLP, 478 B.R. 627, 637 (Bankr. S.D.N.Y. 2012) (finding that in context of bankruptcy, a debt is liquidated "where the claim is determinable by reference to an agreement or by a simple computation") (citing Mazzeo, 131 F.3d at 303–05).

26.    Atlas is in the process of calculating the amounts due under the Loan Documents and the Guaranty and intends to file a proof of claim on or before the Bar Date, which claim is liquidated because it is easily ascertainable and calculable.

### C.    Atlas's Ability to Recover Part of the Debt from the Potential Sale of the Property Does Not Render its Claim Contingent or Unliquidated.

27.    The Debtor's primary argument for why estimation is appropriate is that the Claim amount depends upon the sale of the Property.  The Debtor is incorrect.  As a matter of law, a guaranty claim is not contingent or unliquidated merely because the debt can be satisfied by a non-debtor obligor.  See Ivanhoe, 295 U.S. at 243-46 (holding that a claim is fully allowable and not reduced by the claimant's foreclosure of the underlying collateral.)

9

28.     In <u>Lightsquared</u>, Judge Chapman considered a motion to expunge or estimate certain lenders' guaranty claim at $0.  2014 WL 5488413, at *1-*2.  The basis for the motion was that a proposed plan purported to satisfy the lenders' guaranty claim in full through a surrender of the collateral, which allegedly was worth more than the underlying indebtedness. <u>Id.</u> at *2.  The court rejected the "circular argument" that payment through surrender of collateral creates a contingency that renders the guaranty claim unliquidated, observing that such an argument "confuses and conflates the principles of 'contingent' and 'unliquidated.'"  <u>Id.</u> at *5; <u>see also</u> <u>In re Clore</u>, 547 B.R. 915, 924 (Bankr. C.D. Ill. 2016) ("The fact that the lender may have exercised recourse against collateral or other obligors, does not make a noncontingent debt liquidated . . . where a guaranty is not contingent upon the exercise of other collection remedies, such as an absolute and unconditional guaranty of payment, the existence of collateral or the liability of other parties does not cause the claim against the guarantor to be unliquidated.")

29.     The single case relied upon by the Debtor for her assertion that the Claim is contingent or unliquidated is <u>In re Sneijder</u>, 407 B.R. 46 (Bankr. S.D.N.Y. 2009).  In that case, the court noted, in *dicta*, that the secured creditor's deficiency claim might be subject to estimation in order to prevent the procedural "conundrum" faced by a debtor who is trying to meet the requirements for confirmation under section 1325 of the bankruptcy code.  <u>Id.</u> at 53-54. It did not, however, involve a guaranty claim.  Moreover, the court's concerns regarding the confirmability of a chapter 13 plan simply are not applicable to this case, which was filed under chapter 11.

30.     Here, NSM82 unquestionably defaulted under the Loan Documents and the Debtor triggered the Guaranty by filing an answer in the Foreclosure Proceeding and by commencing the Norfolk Bankruptcy Case.  Moreover, Atlas's ability to monetize the collateral

10

securing the underlying debt does not render its Claim contingent or unliquidated. Rather, Atlas's Claim is fully allowable against the Debtor regardless of the potential sale of the Property. Accordingly, the Debtor has failed to satisfy the first prong of section 502(c) of the Bankruptcy Code.

### D.   **The Debtor Has Failed to Establish Undue Delay.**

31.    As an alternative basis for estimation under section 502(c), a movant must establish that liquidation of the claim outside of bankruptcy would "unduly delay" the administration of the bankruptcy case. In re Enron Corp., No. 01-16034 (AJG), 2006 WL 538552, at *3 (Bankr. S.D.N.Y. Jan. 6, 2006) ("The threshold question in any estimation hearing is whether the 'liquidation' of the Affected Claim outside bankruptcy proceedings would unduly delay the administration of justice."). "Section 502(c) is designed to promote the equitable administration of the estate from the perspective of the Debtor and creditors, and thus it is only where such administration would be unduly burdened that estimation is proper." Id.; see also In re Dow Corning Corp., 211 B.R. 545, 562, 563-64 (Bankr. E.D. Mich. 1997) ("[T]he party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process. . . .[B]ankruptcy law's general rule is to liquidate, not to estimate. For estimation to be mandatory, then, the delay associated with liquidation must be 'undue.'").

32.    Claims estimation is typically utilized in connection with the plan confirmation process. For example, it is often used to determine voting rights on a reorganization plan, gauge plan feasibility, determine the likely aggregate amount of related series of claim, and set distribution reserves. See In re Chemtura Corp., 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) (citing examples). Although estimation can also be used for claim allowance purposes, courts in this District have cautioned against such use. Id. at 650 n.46 ("Using estimation for claims

11

allowance purposes, while permissible (and, indeed, expressly mentioned in section 502(c)(1)), can sometimes raise due process concerns, and for that reason, in *ABIZ*, I used estimation solely for purposes of gauging feasibility, and not for determining ultimate claims allowance.") (citations omitted); see also In re Adelphia Bus. Sols., 341 B.R. at 423 ("Estimation is effective, as I noted, for enabling bankruptcy cases, and chapter 11 cases in particular, to move forward and to get recoveries into the pockets of creditors without delaying the whole process as a consequence of a limited number of very complex claims. But especially since the caselaw makes it clear that Bankruptcy Courts have a great flexibility in estimation procedures, it raises risks of the denial of due process, and Bankruptcy Courts need to be sensitive to this concern.").

33.     Here, the Debtor seeks to utilize claims estimation to effectively disallow and expunge Atlas's entire claim.  This extraordinary remedy would have the effect of disenfranchising Atlas, the Debtor's largest creditor, from participating in the case at a crucial time while the Trustee Motion is pending.  Yet, even assuming that the Claim is contingent or unliquidated until the Property is sold, the Debtor offers no compelling reason why waiting for the sale of the Property would unduly delay the administration the case other than noting, without any further explanation, that she "is in the process of formulating a chapter 11 plan and will be unable to do so without the estimation of Atlas' claim."  Motion, ¶ 2.  The fact that the Debtor may file a plan is not a sufficient justification for estimation under section 502(c), especially where the other prong of the test has not been satisfied.

34.     In addition, Atlas has not filed a proof of claim and the Bar Date is not until August 22, 2019.  See generally In re Roman Catholic Bishop of San Diego, 374 B.R. 756, 760 n.16 (Bankr. S.D. Cal. 2007) ("The motion to estimate is premature since the claims bar date has not yet passed. A court cannot feasibly estimate claims until the bar date has passed and the

universe of claims is known."). Atlas has a non-contingent claim and the amount of the claim

can be easily determined. Furthermore, as set for below, Atlas's Claim is fully allowable under

applicable law. To the extent that it becomes necessary for the Court to determine that any

amount of Atlas's Claim should be reduced by the value of the sale of the Property, that

determination can be made when the sale is completed or in connection with confirmation.

There is no exigency that requires estimation to occur at this time.

## II.    **The Claim Cannot Be Estimated At $0.**

35.    Even assuming, *arguendo*, that Atlas's Claim is capable of being estimated at this

early stage in the case, Atlas's Claim is allowable in the full amount of the Guaranteed

Obligations under <u>Ivanhoe</u> and its progeny, because the Claim cannot be reduced until it is

satisfied in full, as a matter of law. Accordingly, the Debtor's attempt to reduce Atlas's Claim to

$0 should be rejected outright.

### A.    **Atlas's Claim Cannot Be Estimated or Reduced Until it is Satisfied in Full.**

36.    In <u>Ivanhoe</u>, the claimant held an unsecured claim against the debtor for $10,740.

295 U.S. at 245. The claim also was secured by real property owned by a third party. When a

default occurred, the property was sold at foreclosure to the claimant who bid $100 on the

mortgage debt. The claimant then asserted a claim in the debtor's bankruptcy case for $10,740.

In the lower court, the referee argued that the debtor was entitled to offset the value of the real

property collateral ($9,000), rather than the $100 bid for the property at the foreclosure sale. The

bankruptcy court agreed with the referee and reduced the claimant's unsecured claim by the value

of the real property. The district court and Third Circuit affirmed. However, the Supreme Court

reversed, finding that the claimant was entitled to assert a claim for the full amount of the

mortgage against the debtor, unreduced even by the stipulated value of the property, provided that

the claimant could not recover more than the full amount of the claim. See <u>id.</u>, at 245-46.

13

37.    The rule imposed by the Supreme Court that the creditor could assert the full value of its claim, but could not receive a distribution greater than the amount of its claim until such claim is paid in full is known as the "single satisfaction rule."  See In re LightSquared, 2014 WL 5488413, at *5.

38.    Ivanhoe has been affirmed over the years by lower courts.  See, e.g., Feder v. John Engelhorn & Sons, 202 F.2d 411, 412–13 (2d Cir. 1953) (citing Ivanhoe and ruling that a secured creditor that had received some recovery from security provided by a third party could still assert the full amount of its claim against the bankrupt, so long as it did not recover more than the full amount owed); In re Johnson, 477 B.R. 879, 883 (Bankr. M.D. Fla. 2012) (creditor who obtained mortgage foreclosure judgment in state court was entitled to assert full amount of its guaranty claim against the debtor, pursuant to Ivanhoe); see also In re Realty Assocs. Sec. Corp., 66 F. Supp. 416, 424 (E.D.N.Y. 1946) ("[I]t has been conclusively settled that an obligee of a bond or the holder of a claim upon which several parties are liable may prove its entire claim against the estate of any who becomes bankrupt . . . without regard to partial payments made by other obligors until from all sources it has been paid in full."); In re Washington Bancorporation, No. 90-00597, 1996 WL 148533, at *18 (D.D.C. Mar. 19, 1996) ("[A] bankruptcy claim is not reduced or impaired by subsequent payments received from third party obligors until such claim has been satisfied in full.").

39.    Here, Atlas has a Claim against the Debtor based upon the Guaranty.  Under Ivanhoe, the Claim is fully allowed in this bankruptcy case despite Atlas's ability to obtain a recovery in the Foreclosure Proceeding.  Although Atlas may ultimately not realize a *distribution* that is greater than the difference between its allowed Claim and its recovery in the Foreclosure Proceeding, that is an issue to be addressed under the plan (if one ever is proposed), not before

14

the Bar Date arrives.  To date, Atlas has not recovered the full amount of its Claim.  Thus, there is no basis to disallow the Claim at this preliminary stage of the case, let alone estimate it at $0.

> **B.    Altas's Claim is Fully Allowable Under New York Law and Applicable Bankruptcy Law.**

40.     A claim is allowed to the extent it is permissible under nonbankruptcy law, "subject to any qualifying or contrary provisions of the Bankruptcy Code."  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 444 (2007).  Thus, it is appropriate to look to New York law to establish the allowability of Atlas's claim.

41.     "New York State courts have long recognized that when a party guarantees payment of a debt, as opposed to collection of a debt, the guaranty is absolute and unconditional."  In re S. Side House, LLC, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (citing New York cases).  "The elements of an action to enforce an absolute guaranty are the existence of an executed absolute and unconditional guaranty, an obligation to pay the underlying debt, and the failure to pay according to the terms of that agreement."  Id. at 676–77.  "Where a guaranty obligates the guarantor to pay sums due under an agreement entered into by the principal obligor, courts will look to the agreement with the principal to determine the amount that is due."  Id. at 677.

42.     Here, the Guaranty expressly provides that it is "a guaranty of payment and performance and not merely a guaranty of collection."  Palazio Decl. at Ex. 4, § 5.  The Guaranty further provides that it is "irrevocable, absolute and unconditional."  Id.  All pre-conditions to the Debtor's liability under the Guaranty currently are satisfied, and were satisfied prior to the Petition Date.  In addition, the Guaranty expressly sets forth that the Debtor is liable for the "full amount of the Debt (as such term is defined in the Mortgage)."  Id. § 1(c).  Accordingly, as of the Petition Date, the Debtor was liable for the full amount of underlying debt.

15

43.    The Debtor cites to <u>Mrfs. Hanover Tr. Co. v. 400 Garden City Assocs.</u>, 568

N.Y.S.2d 505 (N.Y. Sup. Ct. 1991) and section 1301 of the New York State Real Property

Actions and Proceedings Law ("<u>RPAPL</u>") for the proposition that Atlas "is not permitted to seek

enforcement of the Note [against the Debtor], except a deficiency judgment in the foreclosure

proceeding, unless the mortgagee obtains leave of the court in which the foreclosure proceeding

[is] pending."  Motion, at ¶ 60.  The Debtor's citation to this section of the RPAPL is misplaced.

44.    RPAPL Section 1301[3] provides that "[w]hile the action is pending or after final

judgment for the plaintiff therein, no other action shall be commenced or maintained to recover

any part of the mortgage debt, without leave of the court in which the former action was

brought." RPAPL § 1301[3].  The purpose of this rule is "to avoid multiple actions to recover the

same debt and to confine the proceedings to collect the mortgage debt to one court and one

action." <u>Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.</u>, 156 B.R. 890, 894–

95 (N.D.N.Y. 1993) (citations omitted).

45.    First, this statute does not trump Atlas's right to assert the full amount of its Claim

against the Debtor under Federal bankruptcy law.  <u>See</u> <u>In re Del Biaggio</u>, 496 B.R. 600, 603

(Bankr. N.D. Cal. 2012) (acknowledging that while state law governs the existence and amount

of claims, state law does not require a bankruptcy court to depart from <u>Ivanhoe</u>, which is "at

heart a question of federal bankruptcy law").  Therefore, RPAPL § 1301 does not affect Atlas's

right to assert the full amount of its Claim as an allowed claim.

46.    Second, even if the RPAPL does apply, it does not prevent Atlas from asserting a

deficiency claim against the Debtor or from collecting interest, costs or fees as part of that claim.

Indeed, RPAPL § 1371 expressly permits Atlas to assert a deficiency claim so long as Atlas

named the Debtor and she personally appeared or was served in the Foreclosure Proceeding.

Here, Atlas named the Debtor in its complaint and the Debtor appeared by filing a Verified

Answer in the Foreclosure Proceeding.  Accordingly, the requirements of RPAPL § 1371 have

been satisfied.

47.    Even though the Debtor acknowledges that Atlas is entitled to a deficiency claim,

the Debtor appears to argue that Atlas cannot collect fees or interest on such claim because the

Debtor elected the remedy of foreclosure.  However, the Debtor cites absolutely no authority for

this proposition.  To the contrary, the method for calculating a deficiency claim is set forth

directly in RPAPL § 1371, which provides, in pertinent part, that:

> Such deficiency judgment shall be for an amount equal to the sum
> of the amount owing by the party liable as determined by the
> judgment **with interest**, plus the amount owing on all prior liens
> and encumbrances with **interest, plus costs and disbursements** of
> the action including the referee's fee and disbursements, less the
> market value as determined by the court or the sale price of the
> property whichever shall be the higher.

RPAPL § 1371[2] (emphasis added); see also Marine Midland Bank, N.A. v. Harrigan Enters.,

Inc., 500 N.Y.S.2d 408, 410 (N.Y. App. Div. 1986) (explaining that a deficiency claim is "equal

to the amount of the indebtedness, less the sale price of the property or the fair market value,

whichever is higher") (citing RPAPL § 1371).  Furthermore, "an attorney's fee may be recovered

in the mortgage foreclosure action itself if the mortgage document obligates the mortgagor to pay

such a fee for the expenses incurred in that action …. It is also recoverable in a separate action,

such as the one at bar, where recovery of the fees incurred in the mortgage foreclosure action are

specifically authorized by separate contract."  Levine v. Infidelity, Inc., 770 N.Y.S.2d 83, 84

(N.Y. App. Div. 2003) (citations omitted).

48.    As explained more fully below, here the "indebtedness" includes the amounts due

for interest (including default interest), and costs and attorneys' fees as set forth in the Loan

Documents and the Guaranty.  Atlas can assert these amounts as part of its deficiency claim and

the Debtor cites no law to the contrary.

> **C.** **Atlas is Entitled to Post-Petition Attorneys' Fees and Costs as Part of its Claim.**

49.     Atlas is entitled to attorneys' fees and costs as part of its Claim against the Debtor

pursuant to the express terms of the Guaranty and the Loan Documents.

50.     The Second Circuit has held that an "unsecured claim for post-petition fees,

authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed to

have arisen pre-petition." Ogle v. Fid. & Deposit Co. of Md., 586 F.3d 143, 147 (2d Cir. 2009).

Curiously, this case is cited by the Debtor in the section of the Motion seeking to establish that

Atlas's claim is $0.

51.     Here, attorneys' fees and costs are part of the underlying debt that is covered by

the Guaranty.  Specifically, the Consolidated Note provides, in pertinent part, that:

> Borrower agrees to pay all costs of collection when incurred,
> including, without limitation, reasonable attorneys' fees and out-
> of-pocket related client charges (which costs may be added to the
> amount due under this Note and secured by the Mortgage and be
> receivable therewith).

Palazio Decl. at Ex. 2, § 12(d).

52.     The Guaranty likewise provides, in pertinent part, that:

> Guarantor hereby agrees to pay all costs, charges and expenses,
> including reasonable attorney's fees and disbursements that may be
> incurred by Lender in enforcing the covenants, agreements,
> obligations and liabilities of Guarantor under this Guaranty.

Id. at Ex. 4, § 16.

53.     It is beyond dispute that the Loan Documents and the Guaranty were pre-petition

contracts and that the Debtor's obligations under the Guaranty were triggered prior to the

Petition Date.  At that point, the Debtor's promise to pay the Guaranteed Obligations, including

costs and attorneys' fees, matured and are deemed to have arisen pre-petition under <u>Ogle</u>. Atlas is permitted to assert its reasonable attorneys' fees and costs as part of its Claim. For this reason alone, the Claim cannot be estimated or reduced to $0.

### D.    Atlas is Entitled to the Full Amount of its Post-Petition Interest.

54.    If and when the foreclosure sale is concluded, Atlas is required to apply the distribution it receives from such sale in accordance with the payment schedule set forth in the Loan Documents. Specifically, Atlas will apply the proceeds to satisfy outstanding default interest (including post-petition interest) before applying amounts to satisfy principal. Atlas may then turn to the Debtor to satisfy the remaining principal as part of its Claim, which is permissible under New York law[5] and was agreed to by the Debtor when she executed the Guaranty.

55.    The Consolidated Note provides, in pertinent part, that, in an event of default:

> [A]ll payments or proceeds received by the Lender hereunder or under any Loan Document in respect of such Obligation, including but not limited to all proceeds received by the Lender in respect of any sale, any collection from, or other realization upon all or any part of the Property . . . shall be applied in full or in part as follows:
>
> *first*, to pay the obligations of Borrower in respect of any fees, expense reimbursements, indemnities and other amounts then due and payable to Lender until paid in full;
>
> *second*, to pay Interest (including interest at the Default Rate) then due and payable in respect of the Principal until paid in full;
>
> *third*, to pay Principal until paid in full; and

---

[5] Indeed, the default rule in New York is that a payment is applied to interest first. <u>See</u> <u>Equitable Lumber Corp. v. Stanton Dev. Corp.</u>, 371 N.Y.S.2d 358, 360 (N.Y. Sup. Ct. 1975) ("The general rule is that, in the absence of an agreement providing otherwise, partial payment of a debt is first applicable to the interest due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due.") (citations omitted).

*fourth*, to pay all other Obligations then due and payable to the Lender until paid in full.

Palazio Decl., at Ex. 2, § (8)(b).

56.     Accordingly, Atlas is required to apply any distribution it receives from the sale of the Property to fees, expenses, indemnities and interest, before any principal amounts are repaid.

57.     Applying the proceeds from the sale in this manner does not run afoul of the prohibition on "unmatured interest" contained in section 502(b) of the Bankruptcy Code because the "post-petition" interest is being paid from non-estate resources—here, the proceeds from the sale of the Property.  It is well-settled that section 502(b)(2) does not affect the accrual of unmatured interest as a component of a non-debtor's liability.  See Bruning v. United States, 376 U.S. 358, 362 n.4 (1964) (explaining that disallowance of post-petition interest is a rule of distribution in bankruptcy, and does not mean interest stops accruing on the claim).  Notably, this rule has been applied in the context of third party guarantees.  See In re El Paso Refining, Inc., 192 B.R. 144, 146 (Bankr. W.D. Tex. 1996) (holding that section 502(b)(2) "only prevents unmatured interest from becoming an *allowed claim* against the debtor's *estate*").  Thus, section 502(b) does not prevent "post-petition" interest from accruing under the Loan Documents, because Atlas is required under the Loan Documents to satisfy interest from any sale proceeds prior to satisfying any principal.

58.     Atlas is aware that in In re Nat'l Energy & Gas Transmission, Inc., 492 F.3d 297 (4th Cir. 2007), the Fourth Circuit rejected a creditor's attempt to apply payments in a similar manner, as violating section 502(b).  See id.  That case, however, is not binding on this Court and is distinguishable.

59.     In <u>Nat'l Energy</u>, Liberty filed a claim against the debtor, ET Power, arising from a rejected contract. <u>Id.</u> at 299. NEGT, a co-debtor, guaranteed the debt due to Liberty under the underlying contract. <u>Id.</u> GTN, a related non-debtor, also guaranteed the contract debt. Subsequently, through arbitration, Liberty's damages were calculated at $140 million. <u>Id.</u> During the bankruptcy case, GTN paid $140 million to Liberty. <u>Id.</u> at 300. However, Liberty maintained its claim against the Debtors – ET Power and NEGT – for the full $140 million. <u>Id.</u> In addition, a significant amount of post-petition interest accrued on the judgment, increasing the amount of Liberty's claim by $17 million. <u>Id.</u> Liberty sought to apply the $140 million it received from GTN first to satisfy the accrued interest, and then to satisfy the principal of the debt and recover the difference from the debtors. <u>Id.</u> The debtors objected, arguing that the $17 million constituted unmatured interest under section 502(b) of the Bankruptcy Code. <u>Id.</u> The bankruptcy court agreed with Liberty's position and allowed the full $140 million claim against the Debtor, but provided that the maxim distribution that Liberty could receive in the Debtors' case would be $17 million. <u>Id.</u> The Fourth Circuit reversed.

60.     The majority held that "the § 502(b)(2) bar to collection of interest is not overcome by Liberty's classification of the $17 million it now seeks as principal." <u>Id.</u> at 302. In reaching its holding, the majority considered the policy interests underlying section 502(b), noting that "in cases where the allowance of post-petition interest will not result in administrative inconvenience or unfairness to creditors, post-petition interest may be allowed." <u>Id.</u> at 303 (citing <u>U.S. v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 246 (1989)). The court found that "allowing Liberty to collect the additional amount it seeks *will* have an impact on ET Power's creditors; namely, the loss of $17 million from the estate which would otherwise be available for distribution." <u>Nat'l Energy</u>, 492 F.3d at 303. The court found that this result would be contrary to the policies

21

underlying section 502(b)(2), namely – administrative inconvenience or unfairness to competing creditors.

61.    Notably, Judge Duncan filed a dissent in which he disagreed with the majority's conclusion that section 502(b) altered Liberty's rights to allocate the payments from a non-debtor.  Id. at 403 (Duncan, J., dissenting).  Judge Duncan noted that, as a "basic principle of contract law" Liberty was "entitled to be paid in full, including interest, by its jointly and severally liable debtors."  Id.  Judge Duncan further found that, contrary to the majority's contention, a creditor's receipt of payment from a non-debtor does not implicate either of the purposes of section 502(b).  Id.  He stated, "I fail to see the unfairness in the fact that Liberty bargained, outside of bankruptcy for a guarantee of payment.  That other creditors may not have secured such a guarantee, and therefore might ultimately recover proportionally less than Liberty, strikes me as no injustice."  Id. at 305.

62.    Here, permitting Atlas to apply the sale proceeds in the manner set forth in the Consolidated Note does not create an injustice, nor does it violate the policies underlying section 502(b).  Rather, it would create an injustice to deprive Atlas of its contractual right to payment given that the Debtor has done everything in her power to obstruct and delay Atlas from enforcing its rights under Loan Documents.  First, the Debtor commenced the Norfolk Bankruptcy Case solely for the purpose of delaying the Foreclosure Proceeding.  Additionally, the Debtor filed this bankruptcy case, further hindering Atlas's foreclosure efforts until Atlas was able to obtain stay relief five months after the Petition Date.  Indeed, the Debtor admitted in her motion to voluntarily dismiss this case that she "hurriedly filed her Chapter 11 case *pro se* … in order to stave off attempts of secured creditor, [Atlas], to foreclose upon her [assets]."  See Docket No. 35 (the "Motion to Dismiss"), ¶ 6.  Thus, contrary to the Debtor's baseless assertions

22

in her Motion, the accrual of post-petition interest throughout this case was not Atlas's doing. Rather, it was caused by the Debtor's own bad faith conduct and continuous abuse of the bankruptcy process.

63.    Moreover, unlike in <u>Nat'l Energy</u>, permitting Atlas to recover post-petition interest against the Debtor will not create unfairness between competing creditors.  To date, the only proof of claim filed in this case is by the Internal Revenue Service, whose claim, if valid, will be entitled to paid ahead of Atlas's Claim.  Furthermore, upon information and belief, the Debtor's only other creditors are NSM82 and, potentially, Russell and Lydia Pollack.  These creditors, like the Debtor, were fully aware of Atlas's rights under the Loan Documents and Guaranty.  As a result, there is no injustice by allowing Atlas to assert a claim for post-petition interest pursuant to the Loan Documents.

64.    Finally, permitting post-petition interest does not create an administrative inconvenience.  As previously stated, the interest is easily calculable under the Loan Documents.

**E.    *Alternatively*, Atlas is Entitled to Post-Petition Interest Through the Date Upon Which Stay Relief Was Granted.**

65.    To the extent the Court finds that the Claim is not entitled to post-petition interest in the manner described above, Atlas submits that, at a minimum, it should be entitled to post-petition interest under section 506(b) of the Bankruptcy Code through the date upon which stay relief was granted – July 21, 2018.

66.    It is well-settled that an oversecured creditor is entitled to post-petition interest on its secured claim.  <u>See</u> 11 U.S.C. § 506(b).  A creditor is secured "to the extent of the value of such creditor's interest in the estate's interest in such property."  § 506(a)(1).  Property of the estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Generally, property does not cease to

23

be property of the estate until a foreclosure sale is completed under state law.  See In re Rodgers,

333 F.3d 64, 66-68 (2d Cir. 2003).

67.    In the Motion, the Debtor concedes that Atlas's Claim is "secured to the Real

Property and to the Membership Interests."  See Motion, ¶ 58.  Moreover, the Debtor contends

that Atlas's claim exceeded the fair market value of the Property as of the Petition Date.  Id.

¶¶ 1-2, 68.  However, the Debtor argues that Atlas cannot assert a claim for post-petition interest

because the estate no longer has an interest in the Property or the Membership Interests.

68.    The Debtor is only partially correct.  Although it is true that Atlas does not

currently have a secured claim against the estate, Atlas had a secured claim from the Petition

Date through the date that the Court entered the Stay Relief Order.[6]  And, assuming that the

Debtor is correct that the value of the Property exceeded the Claim as of the Petition Date, Atlas

was oversecured during that time period.

69.    As explained above, it was the Debtor's bad faith filing that prevented Atlas from

foreclosing on the Property.  At a minimum, and as a matter of equity, Atlas should be entitled to

assert a claim for post-petition interest through the date the Stay Relief Order was entered.

70.    Finally, Atlas submits that there may be other reasons to allow Atlas to recover

post-petition interest in this case, including if the Debtor's estate ultimately turns out to be

solvent or if Atlas's Claim is determined to be non-dischargeable.  See generally, In re Gen.

Growth Props., Inc., 451 B.R. 323, 326 n.5 (Bankr. S.D.N.Y. 2011) (acknowledging that section

726(a)(5) permits creditors of a solvent debtor to collect post-petition interest); In re Kellar, 125

B.R. 716, 721 (Bankr. N.D.N.Y. 1989) ("[W]here, as here, the debt owing the creditor is

determined nondischargeable against a debtor personally, those concerns are inapplicable and the

---

[6] "In light of the fact that [the Debtor] is confident the Townhouse will be sold in the near future in an amount to, *inter alia*, satisfy **all of Atlas' secured claims** . . . ."  See Motion to Dismiss at ¶ 11.

interest should continue to accrue post-petition as it has no effect on the assets of the bankruptcy estate."). It is entirely too early to determine whether the Debtor's estate is solvent since the Bar Date has not expired, the Debtor has not filed a chapter 11 plan and, importantly, the Debtor has not filed any periodic financial reports pursuant to Rule 2015.3 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which would shed light as to the true assets of the Debtor's estate. Moreover, the deadline to file a non-dischargeability action has not yet passed. Accordingly, Atlas reiterates that it is entirely too early to estimate Atlas's Claim, let alone make a determination as to the amount of such claim.

III.    **The Value of the Property Should Be Measured as of the Disposition Date.**

71.    Assuming, *arguendo*, the Court finds it is appropriate to value the Property to estimate the amount of Atlas's deficiency claim, the Petition Date is not the appropriate date to value the Property. Instead, the Property should be valued as of the potential date that the Property is sold.

72.    "[N]either the Code nor the Federal Rules of Bankruptcy procedure provides any procedures or guidelines for estimation, and a bankruptcy court has wide discretion in accomplishing it." In re Chemtura Corp., 448 B.R. at 649 (citations omitted). Accordingly, "[f]or both procedure and analytical methodology, bankruptcy courts may use whatever method is best suited to the contingencies of the case." Id.

73.    Here, Atlas submits that the Court should value the Property as of the disposition date of the Property. Under Ivanhoe and its progeny, Atlas is entitled to recover a distribution on the difference between its allowed claim and the amount it *actually* recovers from a sale of the Property. To the extent the Court determines to estimate Atlas's Claim at this juncture, Atlas respectfully submits that the Claim should be estimated at the amount that Atlas would recover from a potential sale of the Property as of the current date. The Petition Date simply is not

appropriate because Atlas did not have the ability sell the Property on that date due to the automatic stay imposed by the Debtor's bankruptcy filing.

## REQUEST FOR CONTINUATION AND RESERVATION OF RIGHTS

74.    To the extent the Court determines that the Claim can be estimated, Atlas respectfully requests the right to conduct discovery on the Motion and, pursuant to Bankruptcy Rule 3012, that the Court conduct an evidentiary hearing on the value of the Property.

75.    For the avoidance of doubt, nothing herein shall be deemed to waive Atlas's right to file a proof of claim, on or before the Bar Date, for any and all amounts due and owing by the Debtor to Atlas.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, Atlas respectfully requests that the Court deny the Motion in its entirety

and grant such other and further relief as the Court deems just and appropriate under the

circumstances

Dated: August 12, 2019
      New York, New York

                            COLE SCHOTZ P.C.

By:    */s/ Nolan E. Shanahan*
        Nolan E. Shanahan
        Daniel F.X. Geoghan
        Jacob S. Frumkin
        1325 Avenue of the Americas, 19th Floor
        New York, NY 10019
        Telephone: (212) 752-8000
        Facsimile: (212) 752-8393
        nshanahan@coleschotz.com
        jfrumkin@coleschotz.com

        *Counsel for Atlas Union Corp.*

54451/0003-17679806v4