```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
In re                              :    Case No. 18-10122 (JLG)

PENNY ANN BRADLEY,                 :    Chapter 11

              Debtor.              :
-----------------------------------X
```

**UNITED STATES TRUSTEE'S MOTION
TO CONVERT THIS CHAPTER 11 CASE
TO A CASE UNDER CHAPTER 7**

**TO:  THE HONORABLE JAMES L. GARRITY, JR.,
      UNITED STATES BANKRUPTCY JUDGE:**

WILLIAM K. HARRISON, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this memorandum of law in support of this motion to convert this Chapter 11 case to a case under Chapter 7. In support thereof, the United States Trustee respectfully alleges as follows:

### Preliminary Statement

The United States Trustee seeks conversion of this case based upon gross mismanagement of the estate by the debtor, Penny Ann Bradley (the "Debtor"). As detailed below, in March 2018, the Debtor deposited over $2.2 million into the account (the "Bistro Shop Account") of her 100%-owned non-debtor affiliate Bistro Shop, LLC (the "Bistro Shop"). From March through September 2018, the Debtor transferred the sum of over $1.9 million from the Bistro Shop Account into the account (the "PBOR Account") of her 100% owned non-debtor

1

affiliate PBOR LLC ("PBOR").  The Debtor then used the PBOR Account to pay her personal expenses as well as the expenses of her other non-debtor affiliates.

In addition, the Debtor used the PBOR Account to pay legal fees for an unretained estate professional.  Her monthly operating reports ("MORs") failed to accurately report these disbursements as well as other disbursements such as the settlement of a lift-stay motion filed by a creditor and the payment of United States Trustee fees.

The United States Trustee previously joined in a creditor's motion for the appointment of a Chapter 11 trustee (ECF No. 145).  Discovery on the motion is pending.  However, the United States Trustee contends that conversion is an equally beneficial -- if not better -- remedy due to the relative speed by which a Chapter 7 case can be administered and the lower costs of such administration.

### Statement Of Facts

1. On January 18, 2018 (the "Petition Date"), the Debtor filed a voluntary pro se petition pursuant to Chapter 11 of the Bankruptcy Code (ECF No. 1).

2. On January 19, 2018, the United State Trustee wrote to the Debtor and gave her a copy of the Region 2 Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (Declaration of Victor Abriano ("Abriano Dec."), Exh. A).  The letter

stressed the requirement of the United States Trustee Region 2 Guidelines (the "UST Guidelines" or "Guidelines") for the opening of separate bank accounts for personal and business expenses in the case of individual debtors engaged as sole proprietors (id., Exh. A, letter, pg 1; Guidelines ¶ 5).  In addition, the Guidelines explained the requirement of filing MORs and the necessity of obtaining Court approval for the retention of professional (id., Guidelines ¶¶ 9, 11).

       3.   By February 14, 2019, the law firm of Daniel Alter, Esq. (the "Alter Firm") appeared on behalf of the Debtor (ECF No. 19). Soon thereafter, the Debtor moved to dismiss her case (ECF No. 35). The Court retained the Alter Firm as Debtor's counsel (ECF No. 32) and LaMonica Herbst & Maniscalco LLP ("LHM") as Debtor's special counsel (ECF No. 156).  No other attorneys were retained by the Debtor (see Docket).

       4.   The Debtor is a 100% owner of (a) a company called Bistro Shop, LLC ("Bistro Shop"); and (b) a company called PBOR, LLC ("PBOR") (Abriano Dec., Exh. F; Exh. G, pg 3 of 86).

       5.   In March 2018, the Debtor deposited over $2.2 million into the Bistro Shop Account (id., Exh. H, pg 50 of 60).  From March through September 2018, the Debtor transferred over $1.9 million from the Bistro Shop Account into the PBOR Account (id. ¶ 11; Exh. I; Exh. G, pg 46 of 86).

6.      The Debtor used the PBOR Account to pay for her personal expenses (id., Exh. G, pg 48 of 86 ("primarily [used] for ordinary monthly living expenses"); Exh. J, pg 17-18) as well transactions involving her non-debtor affiliates (id., Exh. J, pg 30).

7.      The law firm of Cermele & Wood LLP ("C&W") represented the Debtor, co-debtor affiliate Norfolk Street Management LLC, Case No. 18-10113 (JLG) (the "Norfolk Case"), and non-debtor affiliate 46 East 82nd Street LLC pre-petition (id., Exh. E).  The Debtor individually made a pre-petition payment to C&W of $10,000.00 (id., Exh. B, pg 9 of 34).  Thereafter, the Debtor made payments to C&W from the PBOR Account post-petition in March and July 2018 totaling $85,888.81 (id., Exh C, pg 26 of 30; Exh. D, pg 23 of 27).  As of October 23, 2018, C&W represented only the Debtor (id., Exh. E, last page). The Debtor never retained C&W as her counsel (see Docket).  Her MORs for the month of March 2018 indicate no payments were made for professional fees that month (id., Exh. B, pg 2 of 30) despite that PBOR paid C&W the sum of $27,888.86 (id., pg 26 of 30).  The MOR for July 2019 indicates that professional fees in the amount of $68.00 were paid that month (id., Exh. D, pg 2 of 27) despite that PBOR paid C&W $8,000.00 (id., pg 23 of 27).  No fee applications had been granted to any of the Debtor's professionals (see Docket).

8.      A $100,000.00 payment was made in May 2018 from the PBOR Account (id., Exh. L, pg 28 of 33) to Cole Schotz P.C., attorneys

4

for creditor Atlas Union Corporation ("Atlas"), to resolve Atlas' lift-stay motions filed in the Debtor's case and the Norfolk Case (id., Exh. K, pg 3 of 6).  The $100,000.00 payment is not reported as a disbursement in the Debtor's May 2018 MOR (id., Exh. L, pgs 2-3 of 33).  (Nor is a pro-rated sum of $50,000.00.)

    9.  The Debtor paid United States Trustee fees from the PBOR Account in December 2018 and February 2019 (id., Exh. M, pg 27 of 29, Exh. N, pgs 30-31 of 33).  The corresponding MORs state no United States Trustee fees were paid for those two months (id., Exh. M, pg 2 of 29; Exh. N, pg 2 of 33).

    10.  The Debtor's MORs each bear the following disclaimer:

ACCOUNTANT'S FOOTNOTES

THE ACCOMPANYING FINANCIAL STATEMENTS FOR PENNY ANN BRADLEY AND PBOR ARE NOT FINAL AND ARE SUBJECT TO CHANGE AS THE AFFILIATED ENTITIES, UNDER CONTROL OF THE DEBTOR, ARE STILL IN THE PROCESS OF BEING RECONCILED.

(Abriano Dec. ¶ 4 (citing MORs)).

## Argument

### A. General Standards

Section 1112(b) of the Bankruptcy Code provides that the Court may dismiss a Chapter 11 case or convert it to a case under Chapter 7, depending upon which is in the best interest of creditors and the estate if the movant establishes "cause." 11 U.S.C. § 1112(b).

The Bankruptcy Code describes a number of factors, any one of which may constitute "cause" for either the conversion of a Chapter 11 case to a Chapter 7 case or the dismissal of a Chapter 11 case in its entirety. See 11 U.S.C. § 1112(b)(2). Among other things, "cause" includes gross mismanagement of the estate. Id. § 1112(b)(4)(B).

Bankruptcy courts have discretion in deciding whether to dismiss or convert. In re FRGR Managing Member LLC, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009); In re State St. Assocs., L.P., 348 B.R. 627, 638 (Bankr. N.D.N.Y. 2006); In re TCR of Denver, LLC, 338 B.R. 494, 500-01 (Bankr. D. Col. 2006); In re Tornheim, 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995), appeal dsm'd, 1996 WL 79333 (S.D.N.Y. Feb. 23, 1996). While the burden of showing cause rests with the moving party, FRGR, 419 B.R. at 580, that burden can be met either by demonstrating the existence of one or more of the statutory grounds enumerated in Section 1112(b) or by showing other cause. Id.; TCR, 338 B.R. at 500 (reasoning that 2005 amendment retained the prefatory language "includes" in setting forth its illustrations of "cause"); State St., 348 B.R. at 639 n.24 (while the list of examples of cause has changed in the 2005 amendment, the fact that they are illustrative, not exhaustive has not).

The movant's burden under Section 1112(b) is to show "cause" by a preponderance of the evidence. In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994); In re Player Wire Wheels, Ltd., 421 B.R.

6

864, 868 (Bankr. N.D. Ohio 2009), app dsm'd, 2010 WL 2927187 (N.D. Ohio July 26, 2010); In re New Batt Rental Corp., 205 B.R. 104, 106-07 (Bankr. N.D. Ohio 1997)

### B.   Cause Exists To Convert This Case

In the present case, the Debtor's gross mismanagement of her estate constitutes grounds for conversion of her case to Chapter 7.  11 U.S.C. § 1112(b)(4)(B); see In re Tucker, 411 B.R. 530, 533 n.6 (Bankr. S.D. Ga. 2009) (standing alone, gross mismanagement is sufficient cause for conversion or dismissal under Section 1112(b)(4)(B)); In re Products Int'l Co., 395 B.R. 101, 111 (Bankr. D. Ariz. 2008) (gross mismanagement is cause for conversion or dismissal under Section 1112(b)(4)(B)); In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr. M. D. Pa. 2007) (failure to maintain effective corporate management team constituted gross mismanagement and is cause to dismiss chapter 11 case).  As a debtor-in-possession of her estate, the Debtor owes a fiduciary duty to her creditors and is obligated to follow the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  In re Wallace, 2010 WL 378351, at *4 (Bankr. D. Idaho, Jan. 26, 2010), aff'd, 2011 WL 120535 (D. Idaho Mar. 30, 2011); see, e.g., 11 U.S.C. §§ 1106 and 1107 and Fed. R. Bankr. P. 2015 (delineating duties of Chapter 11 debtors in possession, including filing periodic reports and keeping record of receipts and disposition of money received).  The United States

Trustee provides debtors-in-possession with guidelines "to help them navigate chapter 11 by clarifying their financial reporting requirements .... The guidelines echo the Code's provisions ...." Wallace, 2010 WL 378351, at *4.

Here, the gross mismanagement of the estate was three-fold: (a) the Debtor failed to use a debtor-in-possession account to transact all estate transactions, instead, co-mingling personal and non-debtor funds in the PBOR Account; (b) she paid an unretained professional; and (c) her MORs are incomplete and inaccurate. See In re Hoyle, 2013 WL 210254, at *12 (Bankr. D. Idaho Jan. 17, 2013) ("failures of clear accounting raise questions about whether the amounts of all those payments were ultimately transferred into the debtor-in-possession accounts"; In re Congaree Triton Acquisitions, LLC, 492 B.R. 843, 852 (Bankr. D.S.C. 2012) ("[t]he Debtor's failure to file accurate monthly operating reports is another example of the Debtor's gross mismanagement of the estate"); Wallace, 2010 WL 378351, at *5 (paying professionals without Court order).

At the outset of the case, the United States Trustee provided a copy of the UST Guidelines to the Debtor (Abriano Dec., Exh. A). The cover letter emphasized to the Debtor that the Guidelines required the opening of separate bank accounts (id., letter, pg 1). The Guidelines specified that if an individual debtor operated as a sole proprietor, the debtor should open a separate

8

debtor-in-possession account for personal expenses (id., Guidelines ¶ 5). The Guidelines further specified that MORs should disclose "all transactions" of the prior month (id., Guidelines ¶ 9).

Despite this admonition, the Debtor deposited over $2.2 million into the Bistro Shop Account (Abriano Dec. ¶ 10) from which over $1.9 million were transferred to the PBOR Account (id. ¶ 11). The PBOR Account was then used to pay both personal and business expenses (id. ¶ 12; Exh. G, pg 48 of 86). By contrast, the MORs during the pendency of the Debtor's case reported disbursements of only approximately $247,000 (id. ¶ 3).

While it is impossible for the United States Trustee to determine how much of the disbursements from the PBOR Account were personal and how much were paid on behalf of non-debtor affiliates, $85,888.86 were paid to C&W (id. ¶ 5), a firm which has appeared in state court on behalf of the Debtor, co-debtor Norfolk and non-debtor affiliate 46 East 82nd Street LLC (id., Exh. E). As of October 2018, C&W represented only the Debtor (id. (last page)). C&W has not been retained by the Court (see Docket).

In addition, a settlement was paid from the PBOR on behalf of the Debtor and Norfolk in the amount of $100,000.00 (id. ¶ 13). The $100,000.00 disbursement does not appear in the MOR for that month; nor did the MOR report a prorated $50,000.00 disbursement (id. ¶ 14).

Nor did the MORs disclose payments made from the PBOR Account for United States Trustee fees (id. ¶ 15).

Finally, the Debtor's MORs by her accountant's own admission are all incomplete. As noted above, each contains a disclaimer that they have not been finalized (Abriano Dec. ¶ 4 (citing MORs)). Even the earliest-filed MORs have not been amended (id. ¶ 7).

### C.  This Case Should Be Converted

If -- as it should -- the Court finds there is "cause" under Section 1112(b), the Court must then decide whether it is in the best interests of creditors to dismiss the case, or to convert it to a Chapter 7 case. FRGR, 419 B.R. at 580; In re Hampton Hotel Investors, L.P., 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). Although this Office has joined in a creditor's motion for the appointment of a Chapter 11 trustee, this Office contends that it would also be within the Court's discretion to convert the case. Conversion rather than dismissal would afford a Chapter 7 trustee the opportunity to pursue estate causes of action and to administer estate assets. Conversion rather that appointment of a Chapter 11 trustee may even be preferable due to the lower cost of administering a Chapter 7 case and the relative speed of liquidation. Conversion would also obviate the need for the Debtor to file MORS as the responsibility for any financial reporting would be borne by the Chapter 7 trustee, an estate fiduciary. In

addition, by statute, United States Trustee fees are due only "until the case is converted."  28 U.S.C. § 1930(a)(6). Finally, the United States Trustee notes that the burden of proof for a motion to convert -- preponderance of the evidence -- is lower than the clear and convincing standard of a Chapter 11 trustee motion.[1]  The United States Trustee is unaware of any unusual circumstances establishing that conversion is not in the best interests of creditors.  11 U.S.C. § 1112(b)(2).

WHEREFORE, the United States Trustee respectfully requests that the Court enter an Order converting this Chapter 11 case to a case under Chapter 7, and granting such other and further relief as may be deemed just and proper.[2]

---

[1] Although the Second Circuit has stated that the movant has the burden of showing by clear and convincing evidence that the appointment of a trustee is warranted, Adams v. Marwil (In re Bayou Group, LLC), 564 F.3d 541, 546 (2d Cir. 2009), a Supreme Court decision casts doubt on that holding.  In Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 557–58 (2014), the Court stated that "a preponderance of the evidence standard ... is the 'standard generally applicable in civil actions.'"

[2] The Court must also commence the hearing on the motion not later than 30 days after the filing thereof, and decide the motion not later than 15 days after the commencement of the hearing, unless the United States Trustee consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting these time limits. 11 U.S.C. § 1112(b)(3). To the extent that more than 30 days elapse between the time the motion is filed and the date the court may first hear it, the United States Trustee hereby consents to a continuance under Section 1112(b)(3).

Dated:    New York, New York
           October 9, 2019

                                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                  UNITED STATES TRUSTEE

                         By: */s/ Serene K. Nakano*
                            SERENE K. NAKANO
                            Trial Attorney
                            U.S. Federal Office Building
                            201 Varick St., Room 1006
                            New York, New York 10014
                            (212) 510-0505