| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP**<br>3305 Jerusalem Avenue, Suite 201<br>Wantagh, New York 11793<br>Telephone: (516) 826-6500<br>Joseph S. Maniscalco, Esq.<br>Jordan D. Weiss, Esq | Relates to a hearing on December 4, 2019 at 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                    Chapter 11

PENNY ANN BRADLEY,                        Case No.: 18-10122 (JLG)

               Debtor.
------------------------------------------------------------------x

**DEBTOR'S OPPOSITION TO THE UNITED STATE'S TRUSTEE'S MOTION TO CONVERT THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7**

To:    The Honorable James L. Garrity, Jr.
        United States Bankruptcy Court Judge

        Penny Ann Bradley, the Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and through her special counsel, LaMonica Herbst & Maniscalco, LLP ("LH&M"), submits this Opposition ("Opposition") to the Motion of the United States Trustee (the "UST") to Convert this Chapter 11 Case to a Case Under Chapter 7 (the "Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

        The Motion field by the UST should be denied and the Debtor should have an opportunity to work out a plan with her creditors, to the extent they exist, and reorganize her finances. In this case, the UST has failed to establish "cause" under the Bankruptcy Code to justify conversion of the case to a Chapter 7 liquidation. The crux of the Motion focuses on alleged gross mismanagement by the Debtor while in Chapter 11. However, the Debtor retained special counsel in order about June, 2019 and has been fully cooperative with the UST, requests for information from creditors, and has cured all prior deficiencies. There can be no doubt that the Debtor has been diligent in her efforts to provide all disclosures to the UST and to coordinate efforts to resolve

claims with creditors who have filed claims. In fact, the Debtor believes that the total creditor body will be substantially less than what have been filed as claims, and the Debtor has filed motions objecting to claims of creditors. See Dkt. Nos. 172 and 183 (Collectively, the "Claims Motions"). Finally, no parties' interests could be advanced in converting this case to a case under chapter 7 aside from inserting an additional layer of administrative expense and an additional layer of educational learning curve. The Debtor would still have the right to prosecute the Claims Motions and reduce the overall creditors entitled to distribution.

The UST makes three principal arguments in support of its overarching allegation of gross mismanagement: (i) that the Debtor failed to exclusively use a debtor-in-possession bank account and comingled personal and non-Debtor funds in such an account; (ii) that the Debtor's monthly operating reports (the "MORs") are incomplete and inaccurate; (iii) that the Debtor made a post-petition payment to an unretained professional. Each of these arguments are addressed in detail below, but none of them are sufficient to establish cause for this Court to convert the case to a Chapter 7 liquidation. Accordingly, and as set forth more fully below, cause does not exist to convert this case to one under chapter 7 and the Motion should be denied.

## BACKGROUND

**A. Relevant Procedural and Factual Background**

1. On January 18, 2018 ("Filing Date"), the Debtor, *pro se*, filed a voluntary petition ("Petition") for reorganization under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York ("Court"). *See* Dkt. No. 1.

2. On January 29, 2018, Atlas Union Corp. ("Atlas") filed a Motion for Relief from Stay (the "Lift Stay Motion"). *See* Dkt. No. 11.

3. On February 22, 2018, the Debtor filed opposition to the Lift Stay Motion. *See* Dkt. No. 22. Thereafter, the Lift Stay Motion was periodically adjourned, on consent.

4. On March 1, 2018, the Debtor filed her bankruptcy schedules and statement of financial affairs. *See* Dkt. No. 27.[1]

5. On March 1, 2018, the Debtor filed an application to retain Daniel S. Alter, Esq. ("Alter") as her general bankruptcy counsel in this case (the "Alter Retention Application"). *See* Dkt. No. 28.

6. In the Alter Retention Application, and the attachments thereto, the Debtor disclosed that PBOR was wholly owned by the Debtor and had made the pre-petition retainer payment to Alter. *See* Alter Retention Application at 9-10. PBOR is an acronym for "Penny Bradley Owners Representative".

7. By Order dated March 14, 2018, the Court approved the retention of Alter as the Debtor's general bankruptcy counsel. *See* Dkt. No. 32.

8. On March 30, 2018, the Debtor filed a motion to dismiss the Debtor's bankruptcy case (the "Motion to Dismiss"). *See* Dkt. No. 35. The Motion to Dismiss was adjourned, on consent, for a considerable amount of time, as the Debtor and her alleged creditors were working through their issues.

9. On May 11, 2018, the Debtor and Atlas filed a stipulation to modify the automatic stay, *see* Dkt. No. 41, which stipulation was approved by Order of the Court dated May 21, 2018 (the "Lift Stay Order"). *See* Dkt. No. 42.

---

[1] The Debtor is in the process of filing its amended schedules and statement of financial affairs due to amending of its tax returns, filing of its operating reports, and filing the balance of its tax returns.

10. The Lift Stay Order provides that "on May 8, 2018 PBOR, an entity that is 100% owned by [the Debtor] transferred $100,000 … to Cole Schotz's attorney trust account to induce Atlas to enter into this Stipulation and Order." *See* Lift Stay Order, at 3.

11. The Lift Stay Order was signed, *inter alia*, by C&W on behalf of PBOR. *See* Lift Stay Order, at 6.

12. On June 13, 2018, Russel and Lydia Pollack filed an objection to the Motion to Dismiss. *See* Dkt. No. 44. On June 14, 2018, the Debtor filed a reply to the objection to the Motion to Dismiss *See* Dkt. No. 45. Thereafter, the Motion to Dismiss was periodically adjourned, on consent of all parties.

13. On April 16, 2019, the United States Trustee examined the Debtor at her meeting of creditors pursuant to 11 U.S.C. §341(a) ("341 Meeting"), which meeting was closed.

14. On May 2, 2019, the Debtor filed an application to employ Klinger & Klinger, LLP as her accountants. *See* Dkt. No. 92. At this time, since operating reports had not been filed, the Debtor sought an accountant to comply with the UST requests. By Order dated May 21, 2019, the Court approved the Debtor's employment of Klinger & Klinger, LLP. *See* Dkt. No. 93.

15. In a little over a month since the application to retain the accountants, on June 7, 2019, the Debtor filed 16 detailed monthly operating reports for the periods of January 2018 through April 2019, which include bank statements for the Debtor and PBOR, profit and loss statements, and balance sheets. *See* Dkt. Nos. 100-115. Thereafter, the Debtor has filed all necessary additional monthly operating reports. *See* Dkt. Nos. 162, 163, 173, 175, 177, 188 and 189.

16. In or about the same time, the Debtor sought special counsel to assist in the case and to deal with creditor inquiries regarding document production under a Rule 2004 Order. On

June 18, 2019, the Debtor filed an application to retain LH&M as her special bankruptcy counsel, which application was approved by Order dated August 8, 2019. *See* Dkt. Nos. 119 and 156.

17.     At the same time, on June 18, 2019, the Debtor filed a motion to establish a deadline for filing proofs of claim against the Debtor's estate ("Bar Date Motion"). *See* Dkt. No. 120.

18.     On July 2, 2019, the Debtor voluntarily withdrew the Motion to Dismiss. *See* Dkt. No. 124.

19.     On July 9, 2019, the Debtor attended her initial debtor interview with the United States Trustee and such meeting was concluded with the Debtor having provided all information requested by the UST. The Debtor has fully complied with all requests for information and documents of the UST and nothing is outstanding.

20.     On July 10, 2019, an indictment was issued against the Debtor by a Grand Jury in the Supreme Court of the State of New Court, County of New York ("Indictment").

21.     On July 18, 2019, the Court entered an Order approving the Bar Date Motion and setting August 22, 2019 (the "Bar Date") as the deadline for filing proofs of claim against the Debtor's estate. *See* Dkt. No. 134.

22.     On August 13, 2019, the Debtor, pursuant to Bankruptcy Rule 2015.3, filed Periodic Reports on the operations of non-debtor entities substantially controlled by the Debtor, including, *inter alia*, PBOR (the "Rule 2015.3 Reports"). *See* Dkt. No 161.

23.     The Debtor has continued in the management of her business and operation of her affairs as a debtor and debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

24.     No trustee or examiner has been appointed and no official committee of unsecured creditors has been formed.

# ARGUMENT

A. **Legal Standard For The Conversion of a Chapter 11 Case to One Under Chapter 7**

25.  Pursuant to § 1112(b) of the Bankruptcy Code, the Court may either convert or dismiss a chapter 11 case, for "cause." 11 U.S.C. § 1112(b)(1).

26.  The "cause" required to justify conversion of a chapter 11 case to one under chapter 7 is defined, as relevant, to include "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(B).

27.  However, pursuant to § 1112(b)(2)

> the Court may not convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11] if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate, and the debtor or any other party establishes that— (A) there is a reasonable likelihood that a plan will be confirmed … within a reasonable period of time[,] and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than [for substantial or continuing loss or diminution of the estate]— (i) for which there exists reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the Court.

11 U.S.C. § 1112(b)(2).

28.  Moreover, "even if there is a finding of cause—a court is not obligated to convert the case—the decision remains within the court's discretion[,]" which can be exercised where, *inter alia*, "conversion is not in the estates' or the creditors' best interest." In re 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (Glenn, B.J.).

29.  As stated by the UST in the Motion, the movant for conversion bears a burden of showing "cause" by a preponderance of the evidence. *See* In re Woodbrook Assocs., 19 F. 3d 312 (7th Cir. 1994). In this case, the UST has not sustained its burden of proof based on the Motion filed. On the record before the Court, which includes the UST Motion and all prior filings, there

6

can be no doubt that the Debtor has been complying with each of her responsibilities, has diligently filed operating reports, filed Rule 2015.3 statements, and has been working with her accountant to file amended tax returns and any other deficient tax returns. In addition, the Debtor has been working with her general counsel in order to amend her schedules and statement of financial affairs to coincide with her operating reports.

**B.    The UST Has Not Established Gross Mismanagement of the Debtor's Estate**

30.    The UST's argument is premised on the assertion that the Debtor has grossly mismanaged her estate on three principal allegations: (i) that the Debtor co-mingled Debtor funds with non-Debtor funds in the PBOR account; (ii) that the Debtor paid C&W, an unretained professional; and (iii) that the Debtor's MORs are incomplete and inaccurate. While a finding of gross mismanagement is within the discretion of the Court, as set forth below, the Debtor has not engaged in gross mismanagement.

**I.    The Debtor's MORs Are Complete And Accurate And Require Only Minimal Reconciliation Which Will Be Finalized As Soon As Practicable**

31.    The UST argues that the Debtor's estate's accountant's acknowledgment that the financial statements contained therein are not final and subject to change upon reconciliation is "cause" for the conversion of the Debtor's case. However, the Debtor submits that the MORs are complete and accurate and the Debtor believes they will likely only require non-material changes. While the Debtor has filed personal tax returns up through 2015, the Debtor's accountant has been working on amending the 2015 tax return and filing all other tax returns shortly.[2] It is a massive undertaking to make sure that the tax returns are complete and the accountant has been working

---

[2] The Debtor is a real estate developer and many of her investments are contained in limited liability companies. As such, it is an arduous task to reconcile each of the companies and the allocation of expenses properly on those tax returns and on the Debtor's personal tax returns.

7

diligently on this task.

32. The Debtor's difficulty in finalizing the reconciliation of accounts and the MORs has been precipitated by going back several years and locating the documents necessary to properly allocate the funds to the respective real estate entities. The Debtor and her professionals are diligently working towards procuring such documents in a more reasonable manner. There can be no doubt that the Debtor has been consistently filing operating reports, complying with her duties and there is nothing outstanding that has been requested by the UST. As a current Debtor, with current special counsel and general counsel working together, the Debtor has complied with all of her duties and no gross mismanagement has occurred. The Debtor and her professionals intend to be able to complete the necessary accounting in the near future, at which time, the Debtor will be able to and will finalize the MORs.[3]

33. The Debtor submits that the foregoing does not constitute cause. Moreover, the limited omissions from the MORs are justified given the circumstances and the Debtor will timely cure such omissions. Accordingly, the Motion should be denied.

## II. The Payments Made From PBOR Were Not Improper

34. PBOR, which stands for "Penny Bradley Owner Representative", is an entity that was created by the Debtor several years pre-petition for the operation of her business ventures, wherein the Debtor often represents owner-sellers and purchasers, including when acting in her capacity as a licensed real estate broker.

35. PBOR is a separate entity with revenue and expenses separate and apart from those of the individual Debtor. In the Debtor's ordinary course, pre-petition, PBOR would pay certain

---

[3] The Debtor's professionals have maintained a consistent level of communication with the UST on information, documents, and delays, when they occur.

of the Debtor's personal expenses. This also occurred post-petition, in the ordinary course. While the Debtor has been recently advised that her personal expenses should only be paid from her personal DIP account, the Debtor was not fully advised of those procedures when the case was filed. As such, the Debtor had misunderstood the manner in which PBOR would operate and what expenses were permitted to be paid. In any event, the Debtor's estate has received a substantial benefit when certain of the Debtor's personal expenses were paid by PBOR.

36.     Contrary to the naked assertion by the UST that the Debtor commingled personal and non-Debtor funds in PBOR's account, the UST has presented no evidence to substantiate, let alone suggest, that any Debtor funds were deposited **into** PBOR. Instead, as supported by the MORs and by the UST's own statements in the Motion, the overwhelming majority of the funds in PBOR came from another entity owned by the Debtor—Bistro Shop LLC.[4]

37.     The UST further mischaracterizes the Debtor's statements with respect to the Rule 2015.3 Report filed by PBOR. The UST, in paragraph 6 of its Memorandum of Law, characterizes the PBOR Rule 2015.3 Report as saying that the PBOR account is "primarily [used] for ordinary monthly living expenses." *See* Memorandum of Law at ¶ 6 (modification in original). This is simply untrue.

38.     The PBOR Rule 2015.3 Report **actually states**: "During the period covered by this report, certain payments … were made by PBOR LLC, a non-debtor entity, on account of the [Debtor]. *All such payments* are reflected in the bank statements annexed to the operating reports that were filed with the Court … and were primarily for ordinary monthly living expenses." *See* Exhibit G to the Motion, at 8 (emphasis added).

---

[4]     Bistro Shop was a restaurant the Debtor owned. Bistro Shop prevailed in a lawsuit pre-petition and received a settlement payable to Bistro Shop.

9

39. As is readily apparent from the above-quoted language, the UST's insinuation that PBOR was primarily used for the Debtor's personal expenses is unsupported and relies on a misreading and/or mischaracterization of the Debtor's statements. Using that mischaracterization as a basis to convert the case to one under Chapter 7 is not warranted and is insufficient to establish the "cause" necessary under the Bankruptcy Code.

40. The Debtor has not concealed that her personal expenses were paid by PBOR but, instead, has disclosed the existence of PBOR and its payment of certain of the Debtor's expenses at all times, including in the Alter Retention Application, the Lift Stay Order, the MORs, and the Rule 2015.3 Reports. While the Debtor was advised to make sure that personal expenses are only paid from her DIP account, the Debtor did not properly understand this previously.

41. While the UST alleges that PBOR's payments of the Debtor's personal expenses are not included on the MORs, subject to reconciliation, as addressed above, each payment made by PBOR on behalf of the Debtor is listed on the Debtor's MORs as amounts "Due to PBOR." This was done in order to properly reconcile the payments and for ease of understanding for the UST, as well as to ensure that such payments were included for the calculation of UST fees. Indeed, the Debtor's estate received a benefit from those payments made.

42. Moreover, the UST identifies certain specific payments by PBOR that were allegedly not reflected on the MORs including: (i) the payment by PBOR of $100,000 to Atlas' counsel pursuant to the Lift Stay Order; (ii) the payment by PBOR of certain United States Trustee fees; and (iii) the payments by PBOR to C&W (which will be addressed below).

43. The UST argues that the payment by PBOR to Cole Schotz pursuant to the Lift Stay Order should have been included on the Debtor's MORs. However, such payment, which was from non-Debtor funds, was expressly authorized by the Court with full disclosure that the payment was

being made by PBOR. The Debtor, in good faith, did not include such payment on her MORs and submits that doing so was entirely proper because the payment was from non-Debtor funds, with full and complete notice, and with Court authorization. Further, this payment from PBOR did not prejudice any party in interest. However, to the extent the Court determines that such payment should be included on the Debtor's relevant MOR, the Debtor will promptly make such amendment and the UST can reconcile the fees due to it from the Debtor and the Debtor will pay the UST fees for that disbursement.

44. The UST further argues that the payments made by PBOR to the UST were not included on the Debtor's MORs. While the UST is correct that the line item in the MOR does not show UST payments, given that the UST payments were paid by PBOR, the Debtor believed it would have been improper to include such payments as a disbursement from the Debtor's account on the MORs. However, again, this was not concealed. Instead, such payments were either included on the MORs as "Due to PBOR" or will be included once reconciliation is complete and the MORs are finalized. To the extent the Court believes that those expenses should be properly attributable to the MORs and reflected as line item disbursements for the calculation of fees due to the UST, the Debtor will make such adjustments and pay the fees due to the UST.

45. The Debtor submits that the payments by PBOR, with PBOR funds, of some of the Debtor's expenses are definitely not sufficient cause for conversion of the Debtor's case. Accordingly, the Motion should be denied.

### III. C&W Was Paid With Non-Debtor Funds And The Debtor Intends To Retain C&W *Nunc Pro Tunc*

46. Finally, the UST argues that the payments to C&W from the PBOR account are evidence of gross mismanagement of the Debtor's estate. Again, the Debtor does not concede that

11

she ever engaged in gross mismanagement, which is a high standard of proof, but rather proceeded as she believed was necessary and allowed. The Debtor has retained special counsel, who has been working closely with her general counsel and the UST to comply with her duties and responsibilities.

47. As noted above, the funds in PBOR's account, which were used to pay C&W were not Debtor funds, but instead funds belonging to PBOR and Bistro Shop, LLC.

48. Moreover, while C&W did represent the Debtor for some of the matters in which it was engaged, it also represented Norfolk Street Management in connection with a state court foreclosure action and PBOR in connection with, *inter alia*, the Lift Stay Order.

49. While the funds paid to C&W were not Debtor funds and were not all paid on account of services provided to the Debtor, nonetheless, out of an abundance of caution, the Debtor intends shortly to file an application to retain C&W, *nunc pro tunc*, to the Filing Date. To the extent C&W received funds from PBOR on account of legal services provided to the Debtor, C&W intends to place funds in such amount in a separate account pending determination by this Court.

50. In view of the foregoing, the UST has not sustained its burden of proof to convert this case to one under Chapter 7 of the Bankruptcy Code.

C.  **Conversion Is Not In The Best Interests Of The Debtor's Estate And Creditors**

51. The UST argues that conversion is in the best interest of the estate's creditors, in large part because of reduced administrative costs.

52. While in general, the administration of a chapter 7 is likely less expensive than those in a chapter 11, here any chapter 7 trustee and his retained counsel would have a steep learning curve and would be forced to duplicate work already done by the chapter 11 professionals in order to familiarize themselves with the complicated issues present in this case. At this time, the

Debtor has capable special counsel and general counsel who are working together in conjunction with requests from the UST and creditors. Currently, nothing is outstanding and the Debtor intends to file certain amended operating reports, all tax returns, and amended schedules and statement of financial affairs.

53.     Importantly, the Debtor has also spent considerable time and effort negotiating with alleged creditors in order to resolve the various outstanding motions. The Debtor will continue to pursue those negotiations in an effort to resolve those claims consensually. If the Debtor is unable to do so, she will file a disclosure statement and plan of reorganization and seek to emerge from Chapter 11.

54.     Moreover, in the chapter 11 case, much of the value to be provided to the Debtor's creditors will be from the Debtor's continued operations of her business interests, as opposed to a liquidation of the estate's assets. If this case is converted to chapter 7 the estate will be limited and the creditors will likely receive a much smaller distribution.

55.     Accordingly, the Motion should be denied and the Debtor should have an opportunity to either work out an amicable resolution with creditors or propose a plan of reorganization.

## **CONCLUSION**

56.     The UST has not established that the Debtor engaged in gross mismanagement of the estate and has not established that cause exists to convert the Debtor's case. Moreover, the UST has not established that conversion is in the best interest of the Debtor's estate and creditors. Accordingly, the Motion should be denied.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order denying the Motion.

Dated: October 30, 2019
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Special Counsel to the Debtor*

By: *s/ Joseph S. Maniscalco*
Joseph S. Maniscalco, Esq.
Jordan D. Weiss, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500