**COLE SCHOTZ P.C.**
Nolan E. Shanahan
Jacob S. Frumkin
Michael Trentin
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Tel:    (212) 752-8000
Fax:    (212) 752-8393

*Counsel for Atlas Union Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Penny Ann Bradley, | Case No. 18-10122 (JLG) |
| Debtor. | **Related to Docket No. 172** |

**ATLAS UNION CORP.'S OBJECTION TO DEBTOR AND**
**DEBTOR-IN-POSSESSION'S MOTION TO DISALLOW CLAIM**
**NUMBER 3 FILED BY ATLAS UNION CORP. AGAINST THE DEBTOR'S ESTATE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

RELEVANT BACKGROUND ................................................................................................. 3

   I.   The Debtor's Bankruptcy Case.........................................................................................3

   II.   The Note, Mortgage and Guaranty ..................................................................................4

   III.   The Foreclosure Proceeding and the Norfolk Bankruptcy Filing........................................5

   IV.   The Sale of the Property and Remaining Amount Due ......................................................6

OBJECTION ............................................................................................................................ 7

   I.   The Court Should Decline to Hear the Motion Pending a Decision on the Trustee Motions
      and the Conversion Motion...................................................................................................7

   II.   Atlas's Claim Should Be Allowed in Full. ......................................................................8

      A.  The Debtor Has Not Produced Any Admissible Evidence Rebutting the Claim. ........ 8

      B.  The Debtor is Liable for the Full Amount of the Underlying Debt Pursuant to the
          Loan Documents and Guaranty. .......................................................................... 9

      C.  Atlas is Entitled to Apply the Net Proceeds in the Manner Set Forth in the Loan
          Documents. ...................................................................................................... 11

   III.   Section 502(b)(2) of the Bankruptcy Code is Inapplicable to the Claim...........................12

      A.  Section 502(b)(2) Does Not Prevent Post-Petition Interest from Accruing Against a
          Non-Debtor. ..................................................................................................... 13

      B.  The Policy Concerns of Section 502(b)(2) Are Not Applicable in this Case. ............ 14

      C.  Application of Section 502(b)(2) Would Unfairly Deprive Atlas of the Benefit of its
          Bargained for Consideration. .............................................................................. 16

      D.  *Alternatively*, Atlas is Entitled to Post-Petition Interest Through the Date Upon Which
          Stay Relief Was Granted..................................................................................... 18

   IV.   At a Minimum, Atlas Has an Allowed Claim Against the Debtor for Post-Petition
      Attorneys' Fees. ...............................................................................................................19

   V.   The Sale Price is the Correct Measure of the Fair Market Value of the Property. ............20

CONCLUSION....................................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

Albany Sav. Bank, FSB v. Fred Greller Assocs., Inc.,
 178 A.D.2d 953 (App. Div. N.Y. 1991) ...............................................................20

Bruning v. United States, 376 U.S. 358 (1964) .............................................. 13-15

In re Del Baggio, 496 B.R. 600 (Bankr. N.D. Cal. 2012) ................................9

In re El Paso Refining, Inc., 192 B.R. 144 (Bankr. W.D. Tex. 1996) ...........13

Equitable Lumber Corp. v. Stanton Dev. Corp.,
 371 N.Y.S.2d 358 (N.Y. Sup. Ct. 1975) ......................................................12

FDIC v. Colonial Realty Co., 966 F.2d 57 (2d Cir. 1992) ...........................17

In re Greene, 71 B.R. 104 (Bankr. S.D.N.Y. 1987) .......................................8

Ivanhoe Building & Loan Ass'n of Newark, N.J. v. Orr,
 295 U.S. 243 (1935) .....................................................................................9

Kitrosser v. CIT Grp./Factoring, Inc., 177 B.R. 458 (S.D.N.Y. 1995) .........15

In re Kellar, 125 B.R. 716 (Bankr. N.D.N.Y. 1989) ....................................15

Levine v. Infidelity, Inc., 770 N.Y.S.2d 83 (N.Y. App. Div. 2003) ..............11

In re Lightsquared,
 No. 12-12080 (SCC), 2014 WL 5488413 (Bankr. S.D.N.Y. Oct. 30, 2014) ...........9

Marine Midland Bank, N.A. v. Harrigan Enters., Inc.,
 118 A.D.2d 1035 (N.Y. App. Div. 1986) ....................................................11

Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat'l
 Energy & Gas Transmission, Inc.), 492 F.3d 297 (4th Cir. 2007).................... 14-18

New York City Dep't of Fin. v. Twin Rivers, Inc.,
 920 F. Supp. 50 (S.D.N.Y. 1996) ..............................................................10

New York Commercial Bank v. 18 RVC, LLC,
 173 A.D.3d 751 (N.Y. App. Div. 2019) ......................................................20

Ogle v. Fid. & Deposit Co. of Md., 586 F.3d 143 (2d Cir. 2009) ................11

Pascazi v. Fiber Consultants, Inc., 445 B.R. 124 (S.D.N.Y. 2011) ...............7

Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15 (2000)....................................................16

Renco Grp. v. Wilmington Trust, N.A. (In re Magnesium Corp. of Am.),
    583 B.R. 637 (Bankr. S.D.N.Y. 2018) ....................................................................8

In re Rodgers, 333 F.3d 64 (2d Cir. 2003)..................................................................18

Schonfeld v. Hilliard, 218 F.3d 164 (2d Cir. 2000) ....................................................20

In re Taub, 439 B.R. 261 (Bankr. E.D.N.Y. 2010) ........................................................7

Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,
    549 U.S. 443 (2007)................................................................................................16

U.S. Bank Nat'l Ass'n v. Perlmutter (In re S. Side House, LLC),
    470 B.R. 659 (Bankr. E.D.N.Y. 2012)............................................................... 9-10

**Statutes**

11 U.S.C. § 502(a) .......................................................................................................7

11 U.S.C. § 502(b) ............................................................................................. *passim*

11 U.S.C. § 506(b) .....................................................................................................18

11 U.S.C. § 541(a) .....................................................................................................18

11 U.S.C. § 524(e) .....................................................................................................13

NY RPAPL § 1371 .................................................................................................11, 20

TO THE HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE:

Atlas Union Corporation ("Atlas"), by and through its undersigned counsel, submits this objection (the "Objection") to the *Debtor and Debtor-In-Possession's Motion to Disallow Claim Number 3 Filed by Atlas Union Corp. Against the Debtor's Estate* [Docket No. 172] (the "Motion") filed by Penny Ann Bradley (the "Debtor").  In support of this Objection, Atlas submits the Declaration of Sebastian Palazio (the "Palazio Declaration"), and respectfully states as follows:[1]

## PRELIMINARY STATEMENT

1.      By the Debtor's own admission, this bankruptcy case was filed "in order to stave off" Atlas from lawfully exercising its state law foreclosure rights over collateral that was pledged to Atlas by the Debtor and NSM82 LLC ("NSM82") in connection with a loan (the "Loan") made to NSM82, as part of a planned renovation and sale of certain real property located at 46 East 82nd Street, New York, NY 10028 (the "Property").  Now that the collateral pledged by the Debtor has been foreclosed upon and the Property has been sold, the Debtor, as a guarantor, is liable for the difference between the net proceeds Atlas received from the Property sale and the full amount of underlying debt (the "Deficiency Claim").  There is nothing in the Bankruptcy Code (as defined below), under section 502(b)(2) or otherwise, that absolves the Debtor from such liability.

2.      In particular, the Motion is based on the flawed premise that interest on the Loan stopped accruing once the Debtor filed this bankruptcy case.  However, it is well-settled that a bankruptcy filing does prevent interest from accruing on a claim against a non-debtor.  And,

---

[1] In support of this Objection, Atlas also refers to and incorporates herein by reference the proof of claim it filed against the Debtor in this case, assigned Claim No. 3-1, in the amount of $18,465,333.71 (the "Claim").

importantly, even if the Debtor's premise were correct (which it is not), Atlas is not seeking to collect unmatured interest against the Debtor's estate.  Rather, the Claim relates to unpaid principal on the underlying debt and other fees, charges and costs to which Atlas is entitled under the Debtor's guaranty.

3.    Additionally, among other incorrect legal arguments and factual assertions, the Motion is flawed because the Debtor asserts that Atlas is "not entitled to any distribution" and that "Atlas [should] not be entitled to any claim against the Debtor's estate."  These statements are knowingly false, however, because (as the Debtor acknowledges) Atlas is entitled to, at a minimum, post-petition legal fees and expenses.  As such, under no circumstances would Atlas be entitled to *no* distribution from the Debtor's estate or have the Claim denied *in its entirety*.

4.    Finally, Atlas submits that the sale price for the Property, not a hypothetical amount to be determined by this Court or any other court, is the best measure of the fair market value of the Property, since, as described below, the Property was marketed extensively both prior to and after the commencement of this case, and the sale price that was elicited by Atlas was the most that any bona fide purchaser ever was going to pay.  Accordingly, despite the Debtor's wishful thinking and attempt to get a second "bite at the apple" if she is unsuccessful on her legal arguments, a valuation proceeding with respect to the Property is entirely unnecessary and would have no impact on the allowed amount of the Claim.

5.    Accordingly, for these reasons and as set forth in more detail below, Atlas submits that the Motion should be denied in its entirety.

54451/0003-18121016v9

## RELEVANT BACKGROUND

### I.    The Debtor's Bankruptcy Case

6.    On January 18, 2018, almost two years ago, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

7.    On January 29, 2018, Atlas filed the *Motion of Atlas Union Corp. for Entry of an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 11] (the "Stay Motion"), which was granted when the Court entered the *Stipulation and Agreed Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 42] (the "Stay Relief Order") on May 21, 2018.

8.    On July 17, 2019, NSM82 filed the *Motion of NSM82 LLC to Appoint a Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 131] (the "NSM82 Trustee Motion"), to which Atlas and Russell and Lydia Pollack filed joinders, see Docket Nos. 133 and 142, and the Office of the United States Trustee (the "U.S. Trustee") filed a statement in support.  See Docket No. 145.

9.    On July 18, 2019, the Debtor filed her *Motion to Estimate the Claim of Atlas Union Corp. Against the Debtor's Estate in the Amount of $0.00* [Docket No. 135.] (the "Estimation Motion"), which made similar arguments with respect to Atlas's ability to collect on the Deficiency Claim.

10.    On August 12, 2019, Atlas filed an objection to the Estimation Motion [Docket No. 157] (the "Estimation Motion Objection").

11.    At a hearing held on August 14, 2019, the Court denied the Estimation Motion in its entirety.

12.    On August 21, 2019, Atlas filed the Claim.

3

13.     On September 19, 2019, Lewis H. Berman LLC filed its *Motion to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 167] (collectively with the NSM82 Trustee Motion, the "Trustee Motions").

14.     On September 23, 2019, the Debtor filed the Motion.

15.     On October 9, 2019, the U.S. Trustee filed the *United States Trustee's Motion to Convert this Chapter 11 Case to a Case Under Chapter 7* [Docket Nos. 185-186] ("Conversion Motion").

**II.     The Note, Mortgage and Guaranty**

16.     In or around September of 2016, NSM82 consolidated several existing obligations and executed a note for $11.5 million in favor of Atlas (the "Consolidated Note").  See Claim, Ex. A.  The obligations were incurred by NSM82 for the purpose of acquiring, renovating, and ultimately selling the Property.  The Consolidated Note was secured by a mortgage (the "Consolidated Mortgage" and together with the Consolidated Note and other documents related to the loan, the "Loan Documents") on the Property.  See id., Ex. B.

17.     To induce Atlas to enter into the Loan Documents, the Debtor and Norfolk Street Management LLC ("Norfolk"), the managing member of NSM82, executed, among other things, a Guaranty of Recourse Obligations, dated September 12, 2016 (the "Guaranty") in favor of Atlas.  See Claim, Ex. C.  Pursuant to the Guaranty, the Debtor "irrevocably, absolutely and unconditionally" guaranteed the full amount of the debt under the Consolidated Mortgage (the "Guaranteed Obligations").  Id., §§ 1-2.  Under the Guaranty, the Guaranteed Obligations are triggered upon, among other things: (i) "a voluntary bankruptcy or insolvency proceeding commenced by [NSM82] or by [Norfolk]"; and (ii) "if, following an Event of Default, Borrower, Managing Member, any Guarantor or any other member of Borrower contests any foreclosure or

4

any other enforcement action with respect to the Mortgage, any Pledge Agreement or any other Loan Documents." Id., § 1(c)(i) and (iv).

18.    In connection therewith, the Debtor also executed (i) a pledge and security agreement in favor of Atlas in the Debtor's membership interests in NSM82, (ii) a pledge and security agreement in favor of Atlas in the Debtor's membership interests in Norfolk, and (iii) in her capacity as managing member of Norfolk, a pledge and security agreement in favor of Atlas in Norfolk's membership interests in NSM82 (collectively, the "Membership Interests"). See Claim, Exs. D-F.

19.    As described in detail in the Stay Relief Motion, NSM82 defaulted under the Loan Documents in December 2017 and has never cured such defaults.

**III.    The Foreclosure Proceeding and the Norfolk Bankruptcy Filing**

20.    On December 12, 2017, Atlas filed a lawsuit in the Supreme Court of the State of New York, New York, against NSM82, Norfolk, the Debtor and certain other defendants, seeking to foreclose on the Property and for a money judgment against the Debtor and Norfolk to the extent the sale proceeds of the Property was insufficient to satisfy the outstanding amount due under the Consolidated Note and Mortgage (the "Foreclosure Proceeding"). See Claim, Ex. I. The lawsuit named the Debtor and Norfolk in their capacity as limited guarantors, as required by New York law.

21.    On January 16, 2018, the Debtor, along with the other defendants, filed a Verified Answer in the Foreclosure Proceeding, which was signed by the Debtor. See Claim, Ex. J.

22.    On January 17, 2018, the Debtor, in her capacity as the managing member of Norfolk, filed a voluntary chapter 11 petition in this Court on behalf of Norfolk (the "Norfolk Bankruptcy Case"). See In re Norfolk Street Mgmt., Case No. 18-10113 (JLG) (Bankr. S.D.N.Y.).

5

23.     Both the filing of the Verified Answer and the commencement of the Norfolk Bankruptcy Case triggered the Debtor's obligations under the Guaranty.  See Claim, Ex. C, §§ 1(c)(i) and (iv).

**IV.    The Sale of the Property and Remaining Amount Due**

24.     The Property has been extensively marketed since 2015, including by the Debtor and three top real estate brokerages in New York City—Brown Harris Stevens, The Corcoran Group and Douglas Elliman Real Estate.  See Palazio Declaration at ¶ 7.  Additionally, the Property appeared on numerous major listing websites and was the subject of countless open houses, events and advertisements.  Id.  Critically, the Property is only eighteen (18) feet wide, whereas premium townhouses are twenty (20) feet wide or larger, and abuts an elementary school playground, issues that detract from the appeal of the Property to potential purchasers.  Id. at ¶ 9.  As a result, no bona fide purchaser ever materialized that was willing to pay more than $15.1 million for the Property.  Id. at ¶¶ 7-8.

25.     On October 30, 2019 (the "Closing Date"), the Property was sold (the "Sale") to Jaylight LLC for a total purchase price of $15,100,000 (the "Sale Price").  See Palazio Declaration at ¶ 10.  After deducting for, among other things, tax and water adjustments, broker fees, taxes, and title fees, Atlas received $13,277,703.68 in net proceeds from the sale (the "Net Proceeds").  See id.  The Sale was the result of an arm's-length transaction between Atlas and Jaylight LLC, and the Sale Price was reasonable and consistent with the fair market value of the Property.  See id. at ¶ 11.

26.     As a result of the Sale, NSM82's obligations to Atlas were fixed under the Loan Documents in the amount of $19,143,301.07, leaving Debtor liable under the Guaranty for the Deficiency Claim in the amount of $5,855,497.39, which includes additional attorney's fees that

6

have accrued between the date the Claim was filed and the Closing Date.[2] See Palazio

Declaration at ¶ 12.

## **OBJECTION**

**I.      The Court Should Decline to Hear the Motion Pending a Decision on
          the Trustee Motions and the Conversion Motion.**

27.      The Court should decline to hear the Motion until after the Trustee Motions and

the Conversion Motion are decided, because if any of those motions are granted the Debtor will

not have standing to continue prosecuting the Motion.

28.      Section 502(a) provides that a filed claim is "deemed allowed, unless a party in

interest . . . objects."  11 U.S.C. § 502(a).  The term "party in interest," however, is not defined in

that section.  Although there is little doubt that a debtor-in-possession is a party in interest, it is

questionable whether a debtor retains standing once a chapter 11 trustee is appointed.  See 4

Collier on Bankruptcy, ¶ 502.02 (16th ed. 2019) ("In a chapter 7 case, or a chapter 11 case in

which the debtor is not in possession and there is no possibility of a surplus being returned to the

debtor, the debtor usually has no pecuniary interest in the outcome of claims objections and thus

no standing to object to claims.") (citing Pascazi v. Fiber Consultants, Inc., 445 B.R. 124, 127-28

(S.D.N.Y. 2011)); see also In re Taub, 439 B.R. 261, 272 (Bankr. E.D.N.Y. 2010) ("[O]nce a

Chapter 11 trustee is appointed, a debtor lacks standing to bring an adversary proceeding, or

otherwise to assert claims, on the estate's behalf.").  In addition, courts in this jurisdiction have

consistently held that chapter 7 debtors do not have standing to object to claims unless "the

debtor can show a reasonable possibility of a surplus once all claims are paid."  Pascazi, 445

---

[2] The Debtor states in the Motion that "the maximum total amount that Atlas could assert as owing by the Debtor is
$14,134,966.71."  See Motion at ¶ 61.  Even under this scenario, which Atlas disputes, Atlas would be entitled to a
claim in the amount of approximately $1 million, since the Net Proceeds were approximately $13.2 million.

7

B.R. at 127-28; <u>see also</u> <u>Renco Grp. v. Wilmington Trust, N.A. (In re Magnesium Corp. of Am.)</u>,
583 B.R. 637, 649 (Bankr. S.D.N.Y. 2018).

29.     Here, there is a very realistic possibility that either a chapter 11 trustee will be
appointed or the case will be converted to one under chapter 7.  Moreover, given the size of the
claims pool, the Debtor's liabilities and the Debtor's limited reported assets, the likelihood of
any surplus assets being returned to the Debtor is incredibly low.  Accordingly, because the
Debtor may be divested of her standing to prosecute the Motion, Atlas submits that the Court
should decline to hear the Motion until it rules on the Trustee Motions and the Conversion
Motion.

## II.     Atlas's Claim Should Be Allowed in Full.

30.     Assuming, *arguendo*, that the Debtor does have standing to object to the Claim,
the arguments raised in the Motion are without merit and should be rejected by the Court.

### A.     The Debtor Has Not Produced Any Admissible Evidence Rebutting the Claim.

31.     As an initial matter, the Debtor does not dispute the validity of the Loan
Documents or the Guaranty.  Nor does the Debtor set forth any evidence to refute Atlas's
calculation of the Claim.  <u>See</u> 4 Collier on Bankruptcy, ¶ 502.02 (16th ed. 2019) ("Unless an
objector introduces evidence as to the invalidity of the claim or the excessiveness of its amount,
the claimant need offer no further proof of the merits of the claim.") (citing cases); <u>see also</u> <u>In re
Greene</u>, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) ("Such allowance compels the objecting party
to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case.").

32.     The Debtor provided no evidence to refute Atlas's calculations for interest, fees or
costs.  Moreover, because the Sale did not satisfy the Claim in full, Atlas may assert the full
amount its Claim against the Debtor's estate, subject only to the "single-satisfaction rule."  <u>See</u>

Ivanhoe Building & Loan Ass'n of Newark, N.J. v. Orr, 295 U.S. 243, 245-46 (1935) (holding that a claimants' foreclosure on its underlying collateral does not reduce the allowed amount of its claim); In re Lightsquared, No. 12-12080 (SCC), 2014 WL 5488413, at *5 (Bankr. S.D.N.Y. Oct. 30, 2014) (explaining that under Ivanhoe and the "single-satisfaction" rule, a creditor is permitted to assert the full value of its claim against a debtor co-obligor, unreduced by the value of the collateral from a co-obligor, subject to the limitation that a claimant may not recover more than 100 percent of the amount it was owed);  In re Del Baggio, 496 B.R. 600, 603 (Bankr. N.D. Cal. 2012) ("Ivanhoe decides that the amount [of] the creditor's claim in the bankruptcy case is not affected by third-party payments, except to the extent payment from the debtor would produce a double recovery.").  Accordingly, the Court should deny the Motion because the only restriction on the Claim, if any, is that Atlas cannot receive a *distribution* from the Debtor's estate in excess of $5,855,497.39.

> **B.**     **The Debtor is Liable for the Full Amount of the Underlying Debt Pursuant to the Loan Documents and Guaranty.**

33.     There is no dispute that the Debtor guaranteed the full amount of the Guaranteed Obligations or that her obligations under the Guaranty were triggered prior to the Petition Date. Atlas therefore is entitled to collect from the Debtor the difference between the Guaranteed Obligations and the Net Proceeds (i.e., the Deficiency Claim).

34.     "New York State courts have long recognized that when a party guarantees payment of a debt, as opposed to collection of a debt, the guaranty is absolute and unconditional." U.S. Bank Nat'l Ass'n v. Perlmutter (In re S. Side House, LLC), 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (citing New York cases).  "The elements of an action to enforce an absolute guaranty are the existence of an executed absolute and unconditional guaranty, an obligation to pay the underlying debt, and the failure to pay according to the terms of that

agreement." Id. at 676–77. "Where a guaranty obligates the guarantor to pay sums due under an agreement entered into by the principal obligor, courts will look to the agreement with the principal to determine the amount that is due." Id. at 677.

35.    Here, the Guaranty sets forth that (i) the Debtor is liable for the "full amount of the Debt"; (ii) it is "a guaranty of payment and performance and not merely a guaranty of collection"; and (iii) it is "irrevocable, absolute and unconditional." Claim, Ex. C. at §§ 1(c) and 5. In addition, all pre-conditions to the Debtor's liability under the Guaranty were satisfied prior to the Petition Date, when: (i) NSM82 defaulted on its underlying obligations; (ii) the Debtor filed a Verified Answer in the Foreclosure Proceeding; and (iii) the Debtor commenced the Norfolk Bankruptcy Case.[3]

36.    Since the Guaranty is one for payment as opposed to mere collection, Atlas may proceed directly against the Debtor without first taking steps to collect against the primary obligor, NSM82. See New York City Dep't of Fin. v. Twin Rivers, Inc., 920 F. Supp. 50, 53 (S.D.N.Y. 1996) ("[A] creditor who seeks to enforce a guaranty of payment need not take any preliminary steps against the principal debtor before he seeks to collect the debt owed from the guarantor of payment.").

37.    In addition, default interest is expressly part of the Guaranteed Obligations covered by the Guaranty, which similarly is permissible under New York law. See Claim at Ex. A, §§ 3-4, 7-8; see also S. Side House, 470 B.R. at 672 (citing New York cases). Again, the Debtor does not provide any evidence to challenge Atlas's default interest calculation.

---

[3] Atlas believes that the Debtor's obligations under the Guaranty may have been triggered much earlier as a result of her bad acts, including her alleged criminal conduct in obtaining the underlying loan in her capacity as a managing member of NSM82.

38.    Finally, attorneys' fees and costs are also part of the Guaranteed Obligations and the Guaranty, and compensable under applicable law.  See Claim, Ex. 1, § 12(d); id. at Ex. C, § 16; see also Ogle v. Fid. & Deposit Co. of Md., 586 F.3d 143, 147 (2d Cir. 2009); Marine Midland Bank, N.A. v. Harrigan Enters., Inc., 118 A.D.2d 1035, 1037 (N.Y. App. Div. 1986) (explaining that a deficiency claim is "equal to the amount of the indebtedness, less the sale price of the property or the fair market value, whichever is higher"); NY RPAPL § 1371(2) (permitting interest and costs to be included in a deficiency claim); Levine v. Infidelity, Inc., 770 N.Y.S.2d 83, 692 (N.Y. App. Div. 2003) ("[A]n attorney's fee may be recovered in the mortgage foreclosure action itself if the mortgage document obligates the mortgagor to pay such a fee for the expenses incurred in that action.  It is also recoverable in a separate action, such as the one at bar, where recovery of the fees incurred in the mortgage foreclosure action are specifically authorized by separate contract.").

39.    As explained above, here the "indebtedness" includes the amounts due for interest (including default interest), costs and attorneys' fees as set forth in the Loan Documents.  Atlas can assert these amounts as part of the Claim and the Debtor cites no law to the contrary. Accordingly, the Debtor is liable for the full amount of the Claim.

### C.    Atlas is Entitled to Apply the Net Proceeds in the Manner Set Forth in the Loan Documents.

40.    Now that the Sale has concluded, Atlas is entitled to apply the Net Proceeds in accordance with the Loan Documents, which provide for the payment of default interest before principal.  Atlas may then turn to the Debtor to satisfy the remaining principal.  This method is

expressly permitted under New York law[4] and was acknowledged by the Debtor when she

executed the Loan Documents and the Guaranty.

> 41.    The Consolidated Note provides, in pertinent part, that, in an event of default:

> [A]ll payments or proceeds received by the Lender hereunder or
> under any Loan Document in respect of such Obligation, including
> but not limited to all proceeds received by the Lender in respect of
> any sale, any collection from, or other realization upon all or any
> part of the Property . . . **shall** be applied in full or in part as
> follows:

> *first*, to pay the obligations of Borrower in respect of any fees,
> expense reimbursements, indemnities and other amounts then due
> and payable to Lender until paid in full;

> *second*, to pay Interest (including interest at the Default Rate) then
> due and payable in respect of the Principal until paid in full;

> *third*, to pay Principal until paid in full; and

> *fourth*, to pay all other Obligations then due and payable to the
> Lender until paid in full.

Claim, Ex. A, § (8)(b) (emphasis added).

> 42.    Accordingly, the Net Proceeds must be used to satisfy expenses and interest

before principal.

## III.    Section 502(b)(2) of the Bankruptcy Code is Inapplicable to the Claim.

> 43.    Because the Debtor cannot challenge her unconditional liability under the

Guaranty or Atlas's rights under the Loan Documents, she relies almost exclusively on section

502(b)(2) of the Bankruptcy Code to try and reduce or disallow the Claim.

> 44.    Section 502(b)(2) of the Bankruptcy Code provides that:

---

[4] Indeed, the default rule in New York is that a payment is applied to interest first.  See Equitable Lumber Corp. v. Stanton Dev. Corp., 371 N.Y.S.2d 358, 360 (N.Y. Sup. Ct. 1975) ("The general rule is that, in the absence of an agreement providing otherwise, partial payment of a debt is first applicable to the interest due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due.") (citations omitted).

> [i]f objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that . . . (2) such claim is for unmatured interest.

11 U.S.C. § 502(b)(2).  The language relied upon by the Debtor, however, does not apply here

because the Deficiency Claim does not include interest and, importantly, Atlas is not seeking

post-petition interest from the Debtor.

### A.    Section 502(b)(2) Does Not Prevent Post-Petition Interest from Accruing Against a Non-Debtor.

45.    As an initial matter, it is well-settled that section 502(b) does not affect the

accrual of unmatured interest as a component of a non-debtor's liability.  See Bruning v. United

States, 376 U.S. 358, 362 n.4 (1964) (explaining that disallowance of post-petition interest is a

rule of distribution in bankruptcy, and does not mean interest stops accruing on a claim); In re El

Paso Refining, Inc., 192 B.R. 144, 146 (Bankr. W.D. Tex. 1996) (explaining that section 524(e)

of the Bankruptcy Code mandated that independent obligations of guarantor, including the

payment of post-petition interest, were unaffected by bankruptcy of principal obligor).

46.    Here, under the Loan Documents, interest accrues against the non-debtor primary

obligor, NSM82, and is paid from non-estate resources including, among other things, the

proceeds of the Property sale.  The Guaranty, however, does not provide for the accrual of

interest; it merely guarantees the Guaranteed Obligations, which is a claim against a non-debtor.

Viewed in this context, the Debtor appears to be arguing that Atlas cannot seek payment of

interest from a non-debtor or from a sale of non-estate property.  That argument, however,

ignores section 524(e) of the Bankruptcy Code, which states that "the discharge of a debt of the

debtor does not affect the liability of any other entity."  11 U.S.C. 524(e).

13

47.     The Debtor also places heavy emphasis on the case of Nat'l Energy & Gas

Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat'l Energy & Gas Transmission, Inc.),

492 F.3d 297 (4th Cir. 2007) to support her position that section 502(b) cuts off the Debtor's

liability under the Guaranty.  In that case, however, the *debtor* was the primary obligor under the

contract and the *non-debtor* was the guarantor.  Id. at 299.  In other words, post-petition interest

was accruing directly against the debtor and its estate.  Additionally, the guarantors' liability was

capped under the guarantees.  Id.

48.     Here, however, interest has accrued against only a non-debtor and non-estate

property, and because the accrual of interest was not against the bankruptcy estate, section

502(b)(2) is not implicated.  Furthermore, unlike in Nat'l Energy, there is no cap on the amount

of damages allowable under the Loan Documents or the Guaranty.  Finally, it must be noted that

the case of Nat'l Energy is not binding on this Court and contains a strong dissent, which Atlas

submits correctly found that a creditor can apply the amounts it receives from a non-debtor to

pay interest first before principal, in accordance with the underlying documents and state law.

See, ¶ 51, infra.  Accordingly, Atlas submits that the Court should ignore the reasoning of Nat'l

Energy and find section 502(b)(2) to be inapplicable to the Claim.

### B.     The Policy Concerns of Section 502(b)(2) Are Not Applicable in this Case.

50.     The Debtor casually suggests, without citing *any* authority, that enforcement of

the Guaranty is an attempt to "improperly allocate [Atlas's] way around the . . . intent of

§ 502(b)(2) . . . ."  Motion at ¶ 63.  Permitting Atlas to assert a claim against the estate for the

remaining principal, however, has nothing to do with the policy concerns of that section.  In

Bruning, the Supreme Court stated that "[t]he basic reasons for the rule denying post-petition

interest as a claim against the bankruptcy estate are [1] the avoidance of unfairness as between

14

competing creditors and [2] the avoidance of administrative inconvenience." 376 U.S. at 362.

The Supreme Court explained that the first reason for disallowing post-petition interest "is not

because the claims had lost their interest bearing quality during that period," but rather, because

"assets are generally insufficient to pay debts in full," and it would be unfair to give higher-rate

creditors an advantage over lower-rate creditors merely because of the delay that resulted from

the bankruptcy filing.  Id. at 362 n.4. Courts have relied on Bruning to create exceptions to the

prohibition on unmatured interest.  For example, courts have consistently found that post-petition

interest is payable for debts that had not been discharged in the bankruptcy case, notwithstanding

502(b)(2).  See e.g., In re Kellar, 125 B.R. 716, 721 (Bankr. N.D.N.Y. 1989) ("[W]here, as here,

the debt owing the creditor is determined nondischargeable against a debtor personally,

[Bruning's] concerns are inapplicable and the interest should continue to accrue post-petition as

it has no effect on the assets of the bankruptcy estate."); see also Kitrosser v. CIT Grp./Factoring,

Inc., 177 B.R. 458, 469 (S.D.N.Y. 1995) (relying on Bruning, and holding that interest continued

to accrue against debtor's estate because the case was dismissed and the debtor did not receive a

discharge).[5]  Therefore, it is appropriate to consider Bruning's two policy considerations when

determining whether to apply section 502(b)(2).

51.    Here, Bruning's first concern regarding the unfairness to competing creditors is

not implicated because the interest is being paid by a non-debtor from non-estate property, and

thus does not reduce the quantum of assets available to other creditors of the Debtor's estate.

Any disparities in the recoveries is simply the result of Atlas having something the other

---

[5] The Motion also should be denied because the deadline for Atlas to file a non-dischargeability action does not
expire until January 8, 2020.  See Docket No. 199.  To the extent Atlas is successful on such an action, it will be
permitted to recover post-petition interest against the Debtor.  See Kellar, 125 B.R. at 721. Atlas reserves all rights
to file a non-dischargeability action and to seek payment of post-petition interest from the Debtor in connection with
such action.

creditors do not – the right to collect a portion of its debt from non-estate property and a guaranty

claim against the Debtor.  It appears that the majority in <u>Nat'l Energy</u> may have overlooked this

point.  However, Judge Duncan filed a spirited dissent in <u>Nat'l Energy</u> that disagreed with the

majority's conclusion.  <u>See</u> 492 F.3d at 304-06 (J. Duncan, dissenting).  He noted, as a "basic

principle of contract law" Liberty was "entitled to be paid in full, including interest, by its jointly

and severally liable debtors."  <u>Id.</u> at 304.  He further stated, "I fail to see the unfairness in the fact

that Liberty bargained, outside of bankruptcy, for a guarantee of payment.  That other creditors

may not have secured such a guarantee, and therefore might ultimately recover proportionally

less than Liberty, strikes me as no injustice."  <u>Id.</u> at 305.

52.     Permitting Atlas to apply the sale proceeds in the manner set forth in the Loan

Documents similarly does not create an injustice.  Rather, it would be unjust to deprive Atlas of

its contractual rights under the Loan Documents and the Guaranty.

53.     The Supreme Court's second concern – the avoidance of administrative

inconvenience – also is not implicated here.  Now that the Sale has concluded, the Debtor's

remaining indebtedness is fixed in the Deficiency Amount.

### C.     Application of Section 502(b)(2) Would Unfairly Deprive Atlas of the Benefit of its Bargained for Consideration.

54.     Finally, prohibiting Atlas from applying the payments in the manner set forth in

the parties' agreements would impermissibly extend the Court's equitable powers by allowing

the Court to rewrite the parties' valid state law contracts.  The threshold question for allowability

is whether a claim is valid and enforceable under applicable state law. <u>See</u> <u>Travelers Cas. & Sur.</u>

<u>Co. of Am. v. Pac. Gas & Elec. Co.</u>, 549 U.S. 443, 452 (2007) (describing the presumption that

"claims enforceable under applicable state law will be allowed in bankruptcy unless they are

expressly disallowed"); <u>Raleigh v. Ill. Dept. of Revenue</u>, 530 U.S. 15, 20 (2000) ("The basic

16

federal rule in bankruptcy is that state law governs the substance of claims.") (internal quotation marks omitted).

55.    Under state law, Atlas's Claim is based wholly in principal, which is not barred by section 502(b)(2).  Indeed, bankruptcy courts do not have the equitable power to recharacterize valid state law claims absent express statutory authority.  See FDIC v. Colonial Realty Co., 966 F.2d 57, 59 (2d Cir. 1992) ("Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code . . . .") (internal quotation marks omitted).  Here, it would be an abuse of the Court's power under section 105(a) to prohibit Atlas from collecting interest from a non-debtor, NSM82, and would completely ignore applicable state law expressly permitting the contractual arrangement negotiated by the parties.

56.    The principles described above are particularly relevant in this case where the Debtor has done everything in her power to obstruct and delay Atlas from enforcing its rights under the Loan Documents and the Guaranty.  First, the Debtor commenced the Norfolk Bankruptcy Case solely for the purpose of delaying the Foreclosure Proceeding which, on its own, caused the Debtor to trigger the Guaranty and become fully liable for the Guaranteed Obligations.  Additionally, the Debtor filed this bankruptcy case, further hindering Atlas's efforts to foreclose upon the collateral pledged by the Debtor until Atlas was able to obtain stay relief five months after the Petition Date.  Indeed, the Debtor admitted in her motion to voluntarily dismiss this case that she "hurriedly filed her Chapter 11 case *pro se* . . . in order to stave off attempts of secured creditor, [Atlas], to foreclose upon her [assets]."  See Docket No. 35 (the "Motion to Dismiss"), ¶ 6.  Thus, contrary to the Debtor's baseless assertions in her Motion, the accrual of post-petition interest throughout this case was not Atlas's doing.  Rather, it was caused

17

by the Debtor's own conduct.  See Nat'l Energy, 492 F.3d at 302 ("Indeed, § 502(b) itself

reflects the equitable nature of the Code, and our application of its bars on post-petition interest

is to be guided by principles of equity.").  Here, because the only reason the underlying debt has

continued to accrue over such a long period of time is that the Debtor filed, and dragged along,

this case, equitable principles mandate against the application of section 502(b) to reduce Atlas's

Claim.

> **D.    *Alternatively*, Atlas is Entitled to Post-Petition Interest Through the Date Upon Which Stay Relief Was Granted.**

57.    To the extent the Court finds that the Claim is not entitled to post-petition interest

in the manner described above, Atlas submits that, at a minimum, it should be entitled to post-

petition interest under section 506(b) of the Bankruptcy Code through the date upon which stay

relief was granted – July 21, 2018.

58.    It is well-settled that an oversecured creditor is entitled to post-petition interest on

its secured claim.  See 11 U.S.C. § 506(b).  A creditor is secured "to the extent of the value of

such creditor's interest in the estate's interest in such property." § 506(a)(1).  Property of the

estate is broadly defined to include "all legal or equitable interests of the debtor in property as of

the commencement of the case." 11 U.S.C. § 541(a)(1).  Generally, property does not cease to

be property of the estate until a foreclosure sale is completed under state law.  See In re Rodgers,

333 F.3d 64, 66-68 (2d Cir. 2003).

59.    In the Motion, the Debtor concedes that Atlas's Claim was "secured to the Real

Property and to the Membership Interests."  See Motion, ¶ 34.  Moreover, the Debtor contends

that Atlas's Claim exceeded the fair market value of the Property as of the Petition Date.  Id.

¶¶ 65, 70.  However, the Debtor argues that Atlas cannot assert a claim for post-petition interest

because the estate no longer has an interest in the Property or the Membership Interests.

60.     The Debtor is only partially correct.  Although it is true that Atlas does not currently have a secured claim against the estate, Atlas had a secured claim from the Petition Date through July 21, 2018.[6]  And, based on the Debtor's value of the Property, Atlas was oversecured during that time period.

61.     As explained above, it was the Debtor's filing of the Norfolk Bankruptcy Case that prevented Atlas from foreclosing on the Property.  At a minimum, and as a matter of equity, to the extent that the Court reduces or disallows the Claim based on section 502(b)(2), Atlas should be entitled to assert a claim for post-petition interest through July 21, 2018.

## IV.    At a Minimum, Atlas Has an Allowed Claim Against the Debtor for Post-Petition Attorneys' Fees.

62.     Even if the Court reduces the Claim based on the theory that it contains post-petition interest disallowable under section 502(b)(2), Atlas's claim cannot be reduced to $0 because, at a minimum, Atlas is entitled to post-petition attorneys' fees.

63.     Although attorney's fees are part of the Guaranteed Obligations, see Claim, Ex. A, § 12(d), the Guaranty provides a *separate* basis for Atlas to collect fees directly against the Debtor.  Specifically, the Guaranty states:

> Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorney's fees and disbursements that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty.

Id. at Ex. C, § 16.

64.     Although there is some overlap between the fees covered under the Loan Documents and the Guaranty, certain fees covered under the Guaranty were not satisfied from the Net Proceeds.  For example, the fees that Atlas incurred after the Closing Date were not

---

[6] "In light of the fact that [the Debtor] is confident the Townhouse will be sold in the near future in an amount to, *inter alia*, satisfy **all of Atlas' secured claims** . . . ."  See Motion to Dismiss at ¶ 11.

54451/0003-18121016v9

satisfied and the Debtor has a claim for such fees pursuant to the Guaranty.  On this basis alone,

Atlas's Claim cannot be reduced to $0.

**V.    The Sale Price is the Correct Measure of the Fair Market Value of the Property.**

65.    The Debtor argues, in the alternative, that the Court should disregard the Sale and

conduct its own valuation of the Property in order to determine the amount of Atlas's Claim.

The Debtor requests that the Court "hold [this] alternative relief in abeyance" pending a decision

on the other issues raised in the Motion.  See Motion, ¶ 72.  Atlas submits that this Court can and

should determine Atlas's claim based on the Sale Price.  A valuation hearing is entirely

unnecessary and will only cause Atlas and the estate to incur unnecessary fees and costs.

66.    Although Section 1371(2) of the New York State Real Property Actions and

Proceedings ("RPAPL") purports to require a state court to make a market value determination

for purposes of determining a deficiency claim *outside* of bankruptcy, this Court is not bound by

that section while a debtor is in bankruptcy.  See generally Albany Sav. Bank, FSB v. Fred

Greller Assocs., Inc., 178 A.D.2d 953, 953 (App. Div. N.Y. 1991) (noting that "the

determination by the Bankruptcy Court of the fair market value of the property collaterally

estopped defendants from relitigating that issue in [New York] Supreme Court") (citations

omitted).

67.    Critically, as a matter of bankruptcy law, "it is well-established that a recent sale

price for the subject asset, negotiated by parties at arm's length, is the 'best evidence' of its

market value." Schonfeld v. Hilliard, 218 F.3d 164, 178 (2d Cir. 2000).  Furthermore, even

under the RPAPL, a defendant must raise a triable issue of fact as to the value of the property to

be entitled to evidentiary hearing on fair market value.  See New York Commercial Bank v. 18

RVC, LLC, 173 A.D.3d 751, 753, (N.Y. App. Div. 2019).

20

68.    Here, the Sale Price is the best indicator of the Property's fair market value and the Debtor has not offered any evidence to the contrary.  Rather, the Debtor annexed to the Motion a "Comparative Market Analysis" that was "created" in February 2019.  Atlas submits that the Court should place no weight on this alleged analysis, which neither is admissible nor gives any indication of the *current* market value of the Property.

69.    Likewise, the Debtor offers no evidence that the Sale violated New York law or was not conducted at arm's length.  As set forth in the Palazio Declaration, the Property has been extensively marketed since 2015 and no bona fide purchaser ever materialized that was willing to pay more than $15.1 million for the Property.  See Palazio Declaration at ¶ 7.  Additionally, the Sale was the result of an arm's-length transaction and was conducted in compliance with applicable state law.  Id.  The Debtor has yet to provide any evidence to the contrary.

70.    As noted above, the Debtor has the burden to set forth sufficient evidence to rebut Atlas's *prima facie* valid Claim, which she has failed to do.  At this point, the Motion is ripe for adjudication and the Court should not permit Atlas to continue the Motion indefinitely while the Debtor searches for evidence to support her ever-evolving arguments.  The Sale Price is the best measure of the Property's value and, as discussed above, is irrelevant here where the Claim is based on a guaranty, not the value of a non-Debtor asset.

71.    Assuming, *arguendo*, that the Court entertains the Debtor's request to schedule an evidentiary hearing on the fair market value of the Property, Atlas respectfully requests the corresponding right to conduct discovery on this, and any other issues germane to Claim.[7]

---

[7] It should be noted that notwithstanding the Court having entered the *Order Pursuant to Bankruptcy Rule 2004 (I) Authorizing the Issuance of a Subpoena for the Provision of Testimony by the Debtor and (II) Compelling the Production of Documents by the Debtor* [Docket No. 85] almost *8 months ago*, the Debtor has failed to provide Atlas with outstanding responsive documents.  See Docket No. 164.

21

## CONCLUSION

WHEREFORE, Atlas respectfully requests that the Court deny the Motion in its entirety

and grant such other and further relief as the Court deems just and appropriate under the

circumstances

Dated: November 20, 2019
      New York, New York

COLE SCHOTZ P.C.

By:    */s/ Nolan E. Shanahan*
        Nolan E. Shanahan
        Jacob S. Frumkin
        Michael Trentin
        1325 Avenue of the Americas, 19th Floor
        New York, NY 10019
        Telephone: (212) 752-8000
        Facsimile: (212) 752-8393
        nshanahan@coleschotz.com
        jfrumkin@coleschotz.com

        *Counsel for Atlas Union Corp.*

54451/0003-18121016v9