**LaMONICA HERBST & MANISCALCO, LLP**  Relates to a hearing on December 4, 2019 at 10:00 a.m.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.
Jordan D. Weiss, Esq

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                                                  Chapter 11

PENNY ANN BRADLEY,                                                       Case No.: 18-10122 (JLG)

         Debtor.
-------------------------------------------------------------------x

**DEBTOR'S REPLY IN SUPPORT OF THE DEBTOR'S MOTION TO DISALLOW
CLAIM NUMBER 3 FILED BY ATLAS UNION CORP. AGAINST
THE DEBTOR'S ESTATE**

To:    The Honorable James L. Garrity, Jr.
        United States Bankruptcy Court Judge

Penny Ann Bradley, the Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and through her special counsel, submits this Reply to Atlas Union Corp's ("Atlas") Objection (the "Objection") to the Debtor's Motion (the "Motion") to Disallow Claim Number 3 filed by Atlas (the "Atlas Claim"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

By the Motion, the Debtor seeks to disallow the Atlas Claim, which is a deficiency claim, in its entirety because the actual fair market of the Real Property[1] is in excess of the indebtedness owed by NSM82 to Atlas and, thus, pursuant to applicable law, Atlas' claims against the Real Property and the Debtor as a guarantor of any deficiency have been satisfied. Moreover, Atlas is not entitled to assert any post-petition interest against the Debtor's estate as Atlas is not a secured creditor of the Debtor and, even prior to the Lift Stay Order, Atlas was only secured against the

---

[1]    All capitalized terms used but not defined herein shall be ascribed the meaning assigned to them in the Motion.

Debtor's Membership Interests, which were indisputably worth less than the total indebtedness to Atlas under the loan documents.

Atlas argues, principally, that the Motion should be denied or the Court should decline to hear the Motion because: (i) the Debtor might not have standing to pursue claims objections in the event a trustee is appointed and the estate is insolvent; (ii) that Atlas' calculation presented in the Atlas Claim is correct and not challenged by the Debtor; (iii) that NSM82's sale of the Real Property, at Atlas' direction, was at fair market value and is the proper indicator of the actual value of the Real Property; (iv) that Atlas is entitled to post-petition interest against the Debtor's estate, at a minimum, until the date on which the automatic stay was lifted; and (v) that Atlas is entitled to post-petition attorneys' fees.

Atlas' arguments each fail. First, the Debtor had standing to file the Motion at the time it was filed and, to date, retains that standing. Atlas has not presented any evidence that the Debtor's estate will be insolvent. Moreover, while Atlas cites case law holding that a debtor whose estate is insolvent lacks standing to commence a claims objection, Atlas and has not provided any authority for the proposition that if a trustee is appointed after a claims objection has already been filed while the debtor had standing, that such motion should be denied for lack of standing. Atlas is transparently seeking to have this Motion denied on non-substantive grounds in the realistic hope that a trustee will not see a purpose in objecting to a general unsecured claim, despite its deficiencies, and thus, will obtain a windfall.

Second, Atlas conveniently ignores that the calculation of its claim against the Real Property is currently under submission to the State Court in the Foreclosure Action. Atlas, which initially wanted to have its claim determined by the State Court rather than this Court is now desperate to reverse course since it utterly failed to establish in State Court that it is entitled to

2

anywhere near the amounts it has asserted. Allowing Atlas to get a second bite at the apple here, while the amount of Atlas' claim is validly before the State Court would be a waste of judicial resources, as well as those of the parties, and would be prejudicial to the Debtor and the estate's legitimate creditors.

Third, Atlas' unsubstantiated claims that the sale of the Real Property by NSM82, at Atlas' direction—Atlas is the party controlling NSM82 now—was a fair market sale are unproven and likely false. Atlas claims, without substantiation, that it and/or NSM82 extensively marketed the Real Property. The Debtor, who has monitored the marketing of the Real Property, or lack thereof, quite closely, is not aware of any marketing efforts by NSM82 and/or Atlas. The purchaser of the Real Property, who paid $15.1 million, was a purchaser discovered years ago by the Debtor and whose offer was rejected as being insufficient given the actual value of the Real Property. Atlas, in its Objection and in the parties' discussions, has refused to give the Debtor any details about the sale and has refused to allow the Debtor access to the Real Property to obtain an appraisal. Moreover, Atlas' alleges that "[a]fter deducting [from the $15.1 million purchase price] for, among other things, tax and water adjustments, broker fees, taxes, and title fees, Atlas received $13,277,703.68 in net proceeds from the sale." Palazio Declaration, attached to the Objection, at ¶10. That the costs of sale were in excess of $1.8 million utterly strains credulity. The transfer documents recorded on ACRIS show recording fees and transfer taxes totaling $426,752. It is unclear why there would be any broker fees as there is no evidence Atlas and/or NSM82 engaged any broker and the buyer was procured, not by a broker, but by the Debtor. To the extent that Atlas paid any broker fees, such fees were totally unnecessary for a sale that was not actively marketed to a buyer whose offer was obtained years ago by the Debtor, and it is inequitable for Atlas to now seek to charge those unnecessary costs to the Debtor. Mathematically, it seems impossible that

Atlas and/or NSM82 could have run up such high costs on the sale. Accordingly, at a minimum, the Debtor should be entitled to discovery from Atlas and/or NSM82 in order to test the veracity of their allegations with respect to the sale.

Fourth, Atlas is not a secured creditor of the Debtor's estate and is, thus not entitled to post-petition interest. To permit Atlas to apply the proceeds of the sale in order to circumvent § 502 is inequitable to the Debtor and to the estate's legitimate creditors. Moreover, Atlas' alternative argument that it is entitled to post-petition interest through the date of the entry of the Lift Stay Order is unavailing. To the extent Atlas was ever a secured creditor of the Debtor's estate, it was secured only to the Debtor's Indirect Membership Interests—her ownership interest of Norfolk, the managing member and 0.01% owner of NSM82. The Indirect Membership Interests were indisputably worth less than the indebtedness to Atlas and, thus, Atlas was an undersecured creditor with respect to the Debtor's estate and not entitled to post-petition interest.

Fifth, Atlas' assertion of entitlement to post-petition attorneys' fees is incorrect because the actual amount of NSM82's indebtedness to Atlas, the determination of which is currently pending before the Court, is likely less than the purchase price realized and is certainly less than the actual fair market value of the Real Property, such that Atlas' full claim, including attorneys' fees has been satisfied by the sale of the Real Property.

As set forth herein and in the Motion, Atlas is not entitled to any claim against the Debtor's estate and the Atlas Claim should be disallowed, in its entirety.

## BACKGROUND

1. The relevant background is set forth in the Motion, which is incorporated herein by reference.

**ARGUMENT**

**A. The Debtor Has Standing To Pursue The Motion And The Court Should Not Decline Hear The Motion**

2.      Atlas concedes that the Debtor currently has standing to pursue the Motion but argues that, nonetheless, the Court should decline to hear the Motion because of the possibility that a trustee will be appointed or the case will be converted.

3.      Atlas' argument undermines the very concept of standing; there is no good reason to decline to permit a party to exercise the standing it currently has in case it might lose the standing in the future.

4.      Atlas arrogantly assumes that a trustee will be appointed and/or the case will be converted, which is far from a foregone conclusion and are results that the Debtor contends are not warranted and are contrary to the best interests of the Debtor's estate and creditors.

5.      Moreover, the authority cited by Atlas in the Objection only stands, at best, for the proposition that a debtor may not <u>commence</u> actions on behalf of the estate once a trustee has been appointed. Atlas concedes, it is only "questionable" that a debtor lacks standing to pursue claims objections if a trustee has been appointed.

6.      However, Atlas cites no authority for the proposition that the appointment of a trustee would divest the Debtor of standing to continue to prosecute the already filed and litigated Motion in the event a trustee is appointed.

7.      While it is far from clear that Atlas' argument has any sound legal reasoning behind it, what is certainly clear is that Atlas is trying desperately to have the Court not address the merits of the Motion in the hopes that if a trustee is appointed that trustee would determine, despite the

5

lack of merits of the Atlas Claim, that objecting to Atlas' general unsecured claim will not serve a purpose.

8. Accordingly, Atlas' argument should be overruled and the Court should hear the Motion and, ultimately, disallow the Atlas Claim.

**B. The Calculation of Atlas' Claim Against The Real Property Is Currently Under Submission In The Foreclosure Action And The Debtor Anticipates That The State Court Will Determine Atlas' Total Claim Is Less Than The Value Of The Collateral And, Thus, The Atlas Claim Has Been Satisfied**

9. Atlas argues that because the Debtor did not submit evidence countering Atlas' calculation of the Atlas Claim, it is entitled to whatever amount it alleges.

10. Atlas completely ignores that, by Atlas' own choice, the calculation of the total amount of the indebtedness of NSM82 and the guarantors to Atlas, has been fully submitted to a referee appointed by the State Court in the Foreclosure Action and a decision of the referee is expected shortly.

11. In the Foreclosure Action, Atlas was utterly unable to substantiate its erroneous calculation of the indebtedness and faces the likely prospect of having the majority of its claim deemed invalid. In such likely event, Atlas' true claim against the Real Property, NSM82, and the guarantors, will be deemed satisfied by the proceeds of the sale of the Real Property.

12. Atlas, having elected to proceed in the State Court to a foreclosure of the Real Property and the calculation of any deficiency by the State Court, because it believed that it would stand a better prospect of a favorable determination, cannot now seek to change course and proceed here because of its own inability to substantiate the claim in State Court and thus avail itself of *prima facie* entitlement to relief.

13.     Accordingly, to the extent the Atlas Claim is not disallowed for the grounds set forth in the Motion and below, the Court should await rendering a decision with respect to the total indebtedness until such time as the referee issues his decision. To do otherwise would run the risk of inconsistent decisions by Courts that each have jurisdiction and would permit Atlas, who sought and obtained the stay relief it desired, to belatedly forum shop to make up for its own failings in State Court, to the severe prejudice of the Debtor.

### C. Atlas Should Not Be Permitted To Assess Post-Petition Interest Against The Debtor's Estate

14.     While the Debtor does not dispute, and has never disputed, that Atlas can charge NSM82 post-petition interest, seeking to backdoor post-petition interest against the Debtor is violative of the text and spirit of § 502(b)(2) and should not be permitted.

15.     Atlas takes pains to distinguish Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat'l Energy & Gas Transmission, Inc.), 492 F.3d 297 (4th Cir. 2007), because there the debtor was the principal obligor and the payments being applied to post-petition interest were those from a third party. However, that is a distinction without difference. The underlying rationale of the Nat'l Energy Court was that § 502(b)(2) prohibits the application of funds received from co-liable parties so as to receive payments from a debtor's estate that it otherwise would otherwise not be entitled to receive from the debtor.

16.     Here, like in Nat'l Energy, it would be inequitable to the Debtor, and more importantly, to the Debtor's legitimate creditors, to permit Atlas to collect post-petition interest from the Debtor's estate and thereby dilute the claims of those legitimate creditors.

17. Accordingly, § 502(b)(2) bars Atlas from collecting post-petition interest from the Debtor, either directly or indirectly by classifying payments received from other parties as interest. Therefore, the Motion should be granted.

### D. Atlas Has In No Way Substantiated Atlas' Purported Costs Of Sale Nor That The Sale Of The Real Property Was For Fair Market Value And, To The Extent The Motion Is Not Granted On Other Grounds, The Debtor Requires Discovery

18. As set forth in the Motion, pursuant to New York law, the calculation of a deficiency judgment is determined by subtracting from the debt the actual fair market value of a real property, not its sale price. *See* Motion, at ¶¶ 65-72.

19. Atlas argues, citing Albany Sav. Bank, FSB v. Fred Greller Assocs., Inc., 178 A.D.2d 953 (App. Div. N.Y. 1991), that this Court is not bound by R.P.A.P.L. § 1371(2) while the Debtor is in bankruptcy. The parenthetical citation provided by Atlas, Albany Sav. is totally inapposite to the proposition for which Atlas is citing it. Albany Sav. merely stands for the proposition that where a bankruptcy court has already made a determination of the fair market value of real property, the parties are estopped from relitigating the value of the property in state court. Albany Sav., 178 A.D.2d at 953. The Debtor does not dispute that legal conclusion, but it is inapplicable here as there has been no determination by this Court as to the fair market value of the Real Property.

20. As noted by Atlas, the substance of claims against a debtor's estate are governed by state law. *See* Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 20 (2000). As relevant here, state law provides that a deficiency claim against an obligor on a mortgage is calculated by determining the actual fair market value of the property, not by a forced sale price. *See* N.Y. R.P.A.P.L. § 1371(2).

21. The Debtor is not seeking to have the State Court determine the fair market value of the Real Property, but believes that this Court can and should make such a determination, as is required in order to determine the Debtor's liability on any purported deficiency claim.

22. While Atlas is correct that an arm's length, fair market sale is generally the best evidence of the value of a real property, here, Atlas has in no way substantiated that the sale of the Real Property was a fair market sale. Other than Atlas' unsubstantiated claims that it and/or NSM82 marketed the Real Property, it appears that no real marketing was done since Atlas took control of NSM82.

23. In the event the Motion is not granted on other grounds, the Debtor has the right to present evidence before this Court as to the actual fair market value of the Real Property. The Debtor's attempts to obtain evidence necessary to make such a showing have been unreasonably thwarted by Atlas and NSM82, which have improperly refused to give an appraiser access to the Real Property. Moreover, in light of the clear irregularities with the sale, including the apparent lack of any marketing by Atlas and/or NSM82 and the alleged $1.8 million of costs of sale, the Debtor reasonably has concerns that the sale of the Real Property was not truly an arm's length transaction for fair value.

24. Accordingly, the Debtor requires discovery related to, *inter alia*, what marketing efforts, if any, were taken by Atlas and/or NSM82, whether Atlas and/or NSM82 retained a broker in connection with the sale, and what the true costs of the sale were. Therefore, to the extent the Motion is not otherwise granted, the Court should permit the Debtor to conduct such discovery.

## **CONCLUSION**

25. As set forth herein and in the Motion, the Atlas Claim has been satisfied in full and the Motion should be granted disallowing the Atlas Claim.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order granting the Motion.

Dated: November 25, 2019
      Wantagh, New York      **LaMONICA HERBST & MANISCALCO, LLP**
*Special Counsel to the Debtor*

By:   *s/ Joseph S. Maniscalco*
      Joseph S. Maniscalco, Esq.
      Jordan D. Weiss, Esq.
      3305 Jerusalem Avenue, Suite 201
      Wantagh, New York 11793
      Telephone: (516) 826-6500